## YOUNG v. BLACKERT *et al.*

No. 5273. Opinion Filed September 21, 1915.

(151 Pac. 1057.)

1. **WITNESSES—Competency—Husband and Wife.** In an action where husband and wife are joint parties, both are competent to testify.

2. **FRAUD—Proof—Necessity—Law and Equity.** Fraud must be proved at law. In equity it suffices to show facts and circumstances from which it may be presumed.

3. **CONTRACTS—Performance—Tender—Waiver.** Where the tender of performance of an act is essential to the establishment of any right against another party, such tender or offer to perform is waived, or becomes unnecessary when it is reasonably certain that the offer will be refused.

4. **APPEAL AND ERROR—Judgment—Evidence.** Evidence examined, and **held** sufficient to sustain the judgment.

(Syllabus by Bleakmore, C.)

*Error from District Court, Blaine County;*
*James R. Tolbert, Judge.*

Action by J. E. Young against C. E. Blackert and another. Judgment for defendants, and plaintiff brings error. Affirmed.

*C. F. Dyer* and *J. W. Hayson,* for plaintiff in error.
*R. B. Forrest,* for defendants in error.

Opinion by BLEAKMORE, C. This action was commenced in the district court of Blaine county on the 7th day of August, 1912, by the plaintiff in error against the defendants in error, husband and wife, upon three prom-

issory notes aggregating $1,000 and interest, and to fore-close a mortgage given to secure the same, of date March 7, 1911. The answer admits the execution of the notes and mortgage, and alleges that the same were given as the purchase price of nine shares of the capital stock of the Bank of Commerce of Geary, Okla.; that plaintiff for a long time prior thereto had been, and was then, the cashier of said bank and knew its financial condition; that said bank was then insolvent; that its property and business were, on the 4th day of May, 1911, taken in charge by the State Bank Commissioner and its indebtedness liquidated, the whole of its assets being applied in satisfaction of its obligations; that plaintiff, being fully aware of the—

"failing and insolvent condition of said bank, proposed a sale of said stock to C. E. Blackert, one of the defendants, and to induce him to purchase said stock, represented to and advised the said C. E. Blackert that said bank was in a good, sound condition, and that its affairs were in such shape that profits would be realized by the continuation of its business. * * * That said C. E. Blackert had no knowledge of said failing condition of said bank, nor of its affairs, aside from information as he acquired and procured from and through the plaintiff; and defendants further aver that, at the time of the negotiations between plaintiff and defendants leading up to the making of the contract herein referred to, and made a part hereof, the plaintiff had knowledge of and knew that the books of said bank, and the securities and deposits thereof, had been tampered with and misused and misapplied and said books doctored and maneuvered with to cover and cancel certain illegal transactions by the officers of said bank, certain to bring ruin upon the same; but defendants aver that all of such matters, though well known to plaintiff, were concealed from these defendants at the time of such negotiations, and such concealment thereof

was made and intended by plaintiff for the express purpose of deceiving this defendant C. E. Blackert into entering into the contract for the purchase of said shares of stock. That on the 13th day of March, 1911, C. E. Blackert, believing the representations of plaintiff relative to the sound condition of said bank, and that its affairs were in a safe condition, and being wholly ignorant of the matters hereinbefore referred to relative to the crookedness and failing condition of said bank, and relying wholly upon the representations of the plaintiff, entered into the contract hereto attached, marked 'Exhibit A,' with the plaintiff, which said contract is made a part of this petition, and then and there made, executed, and delivered to plaintiff their three certain promissory notes," etc.

Plaintiff replied by general denial, and alleged that defendant was for a long time before said sale a stockholder in said bank, having access to its books and records, and did at various times examine and was familiar with the bank and its affairs; that in December, 1910, the Bank Commissioner, after an examination of said bank, required the removal from its assets of notes to the amount of $6,000 and that amount of cash to be placed in said bank in lieu thereof; that the defendant C. E. Blackert was present and knew of such requirement and participated in the negotiations concerning the same, and paid to the Bank Commissioner his share of the assessment against the stock of said bank necessary to meet the demand of such commissioner. The instant case was consolidated with another previously begun and pending in the same court, wherein C. E. Blackert was plaintiff and J. E. Young defendant, seeking to cancel and annul the instruments involved herein. The cause was by agreement tried to the court, and resulted in judgment for defendants canceling the notes and mortgage in suit.

Young v. Blackert et al.

There are many assignments of error, those urged in the brief being: () Error of the court in permitting the introduction of any evidence on behalf of defendants, for the reason that the answer does not set forth facts sufficient to constitute a defense. (2) Error in permitting the defendant Nellie E. Blackert to testify, she being the wife of her codefendant. (3) Error in overruling demurrer to the evidence of defendants. (4) Error in overruling motion for new trial. (5) Error in finding the issues for defendants, and that the judgment is against the evidence and contrary to law.

We are of opinion that the allegations in the answer are sufficient to constitute a defense, and that there was no error in permitting the introduction of evidence thereunder.

The statute (section 5050, Rev. Laws 1910) provides:

"The following persons shall be incompetent to testify: * * * Third: Husband and wife, for or against each other, except concerning transactions in which one acted as the agent of the other, or when they are joint parties and have a joint interest in the action. * * *"

Nellie E. Blackert and her husband were joint makers of the notes and mortgage sued on and joint parties defendant against whom personal judgment and foreclosure was sought; and, clearly coming within the statutory exception, she was a competent witness.

The Bank of Commerce of Geary was a state bank with a capital stock of $10,000. On November 26, 1910, the bank was examined, and a short time thereafter, by direction of the Bank Commissioner, some $6,000 in cash items and worthless notes were charged off and an assess-

ment levied against the stockholders of 60 per cent. to
replace the same.   Defendant C. E. Blackert was a small
stockholder in the bank.   He had been absent from the
state for a considerable time, and had returned to Geary
about the time the bank was examined, and, with the offi-
cers and other stockholders, was present at a meeting with
the Bank Commissioner at Oklahoma City when the
order above referred to was made, and pursuant thereto
paid his proportionate part of that assessment.   The
plaintiff had been the cashier of the bank .for some 13
months prior to the sale of the stock to defendants.   In
the latter part of October, before the bank was examined
in November, plaintiff approached defendant Nellie E.
Blackert with an offer to sell his stock in the bank to her
husband, who was then absent from the state.   The notes
and mortgage in suit bear date of March 7, 1911, but
were not delivered to plaintiff for several days thereafter,
during which time he remained in the bank performing
the duties of cashier.   The bank was again examined on
the 24th day of April, 1911, by an examiner, W. C.
Ernest, who testified:

"I also found at this examination, April 24, 1911, that
the bills receivable of this bank were short $8,051.36.
I also found at this examination, April 24, 1911, enough
other bad notes in the bills receivable of this bank, to-
gether with excessive expenses account of $816.66 and a
'stock account' of $200, to make a total of worthless
paper and assets of $13,458.19."   "Q.   I will have you
state, Mr. Ernest, whether these bills receivable and these
bad notes that you refer to, whether they were notes long
past due at the time you made this examination on April
24, 1911, and can you approximately state when they
had fallen due or matured?   You may state whether or
not they had matured prior to March 7, 1911.   A.   Re-
ferring to the above question concerning the maturity of

bad notes, they were all past due at this examination on April 24, 1911, since November and December, 1910, except three small notes which were past due since March, 1911. All of these notes had matured prior to March 7, 1911. Q. What can you say about the item that you designate as 'bills receivable short'? Define that character of item. A. I mean by 'bills receivable short' that the general ledger of the said bank showed that there should be on hand, at the date of this examination, April 24, 1911, $8,051.36, more than I could find in the note case containing the bills receivable of said bank."

The defendant C. E. Blackert testified as to the condition of the bank when the sale of the stock was consummated; that plaintiff retired and he went into the bank as the cashier about the 18th of March, 1911; that on the evening of that day when he assisted in counting the cash on hand he found the shortage consisting in part of a list of items that had been charged off by order of the Bank Commissioner and replaced by the 60 per cent. assessment in December previous thereto, and that a few days later he found that the bills receivable were also short about $7,500, and that a great many of the notes were a year or two years past due, but bearing the notation that the interest had been paid to a certain date. With reference to the representation made by plaintiff he testified:

"Q. Give the court the gist of the conversation, the negotiations. What was said by him and you in any of the conversations, if you can remember it? A. I said, 'Mr. Young, if I buy in here I want to examine this paper,' and Mr. Young said, 'That won't be necessary; it is all right.' Then, at another time still later on, I put it to him just about the same way. Q. State that again— what you said to him—I was interrupted. A. I said, 'Mr. Young, I am getting too old to take any chances, and I have a large family to support and educate, and if I

don't examine this paper I won't know what to think of it.' He says, 'You know the banking board made a 60 per cent. assessment and cleaned out that old paper, and it looks to me as though it was no need of an examination.' But this time he put it this way: That it wasn't necessary because the banking board—"

This action was tried as a suit in equity, and the court found the issues as to the alleged fraud in favor of defendants.

"Fraud, actual or positive, includes cases of the intentional and successful employment of any cunning, deception, or artifice used to circumvent, cheat, or deceive another." (1 Story, Eq. Jur. sec. 186.)

In *Bottoms v. Neukirchner*, 29 Okla. 104, 116 Pac. 434, this court, speaking through Mr. Chief Justice Kane, said:

"It seems that a lesser degree of proof is required to establish fraud in equity than in law"

—and quoted with approval from *Armstrong, etc., v. Lachman et al.*, 84 Va. 726, 6 S. E. 129, as follows:

"It is not safe to undertake to define what degree or kind of proof will justify a court of equity in granting relief against fraud, for the proof must satisfy the conscience of the court, and no man would deem it prudent to attempt to define the extent of that indispensable qualification in a judge or a court."

In *Brooks v. Garner*, 20 Okla. 236, 94 Pac. 694, 97 Pac. 995, it was said:

"In the case of *King v. Moon*, 42 Mo. 551-554, the court says: 'While the law will not imply or presume fraud, yet common experience teaches that it is seldom that any direct or positive proof can be obtained in regard to any given transaction, no matter how fraudulent it may be. Fraud, in common with the highest crimes known to law, is commonly made out by circumstantial or

presumptive evidence. The very charge implies color and disguise, to, be dissipated by *indicia* alone. Per Cowen, J., *Waterbury v. Sturtevant,* 18 Wend. (N. Y.) 353. Fraud may be presumed in equity, but must be proved at law. Therefore courts of equity, it is said, will act upon circumstances as indicating fraud which courts of law would not deem satisfactory proofs, or, in other words, will grant relief upon the ground of fraud established by presumptive evidence, which evidence courts of law would not always deem sufficient to justify a verdict. *Jackson v. King,* 4 Cow. (N. Y.) 207, 15 Am. Dec. 354; 1 Story, Eq. Jur. arts. 190-193, and cases cited; 3 Greenl. Ev. art. 254. The range of inquiry in the investigation must necessarily be very extensive, and bring within its scope all the circumstances bearing upon the question.' " *Wimberly v. Winstock et al.,* 46 Okla. 645, 149 Pac. 238.

Plaintiff also contends that defendants did not restore or offer to return to him the shares of stock with which he parted, and for this reason they ought not to prevail. Referring to a conversation with defendant C. E. Blackert, occurring some time after the transaction in question, plaintiff himself testified:

"A. I told him, 'Let's go up in the office,' and he did. He wanted to see me and have a talk and see if we couldn't get together. Q. On what? A. On the proposition. He thought I had sold out to him, and it would work a hardship on him. Q. What did you say to him? A. I stated to him that I didn't think I had knowingly, at the time. Q. What did he say? A. Well, he said— didn't say a great, but I don't exactly remember. Q. Was that after you notified him that this note would be due? A. That was a little while before. Q. Well, when you notified him that this note was due, did he come to see you? A. Did not. Q. What did he do? A. Started proceedings; got an injunction. Q. Did Mr. Blackert ever come and tender to you the stock which he got in the bank and demand from you a return of that which he gave you? A. He did not. Q. Did he say to you that

he elected to rescind the contract? A. No, sir. Q. When was the first time you knew he ever claimed anything of that kind? A. When he talked to me. Q. When? A. At the time he met me and told me he wanted a talk. Q. About six months afterwards? A. Yes, sir. * * * Q. You knew at the time Mr. Blackert had this talk with you that the bank had failed? A. Yes, sir. Q. You knew that there was liable to be an extra assessment made on that stock? A. No, sir; I didn't know that, particularly. I know stockholders—there is double liability. Q. But you wouldn't have taken that stock back if he had tendered it?

"Mr. Dyer: Oh, we object to that.

"The Court: Overruled.

"Mr. Dyer: Exception. A. I considered we had made the deal. No, sir. No more than some other transactions."

It is clear from the evidence that, had defendants offered to restore the shares of stock, such offer would have been refused; and therefore the rule obtains that when the tender of performance of an act is necessary to the establishment of any right against another party, such tender or offer to perform is waived or becomes unnecessary when it is reasonably certain that the offer will be refused. *St. L. & S. F. R. Co. v. Richards,* 23 Okla. 256, 102 Pac. 92, 23 L. R. A. (N. S.) 1032; *Creek Land & Improvement Co v. Davis,* 28 Okla. 579, 115 Pac. 468; *Hills v. Exchange Bank,* 105 U. S. 319, 26 L. Ed. 1052.

Upon consideration of the entire record we cannot say that the judgment is clearly against the weight of the evidence. There was no error in the proceedings of the trial court to the prejudice of the rights of plaintiff, and we are of opinion that the demands of substantial justice are met in the result.

The judgment should be affirmed.

By the Court:   It is so ordered.