## RAWLINGS v. UFER.

No. 8035—Opinion Filed Nov. 21, 1916.

(161 Pac. 183.)

**1. Trial—Taking Case from Jury—Demurrer to Evidence.**

The test applied to the demurrer to the evidence is that all the facts which the evidence in the slightest degree tends to prove, and all inferences or conclusions which may be reasonably and logically drawn from the evidence, are admitted, and the court cannot weigh conflicting evidence, but must treat that as withdrawn which is most favorable to the demurrant.

**2. Evidence—Parol Evidence Affecting Writing—Contract Partly in Writing.**

Where an oral contract is partially reduced to writing, and the writing evidencing it is not a complete and final statement of the entire transaction, parol evidence not inconsistent with such written contract is admissible to show the full agreement.

**3. Contracts — Performance — Tender — Waiver.**

When the tender of performance of an act is necessary to the establishment of any right against another party, this tender or offer to perform is waived or becomes unnecessary when it is reasonably certain that the offer will be refused.

**4. Brokers—Compensation—Performance of Contract—Tender.**

In a suit by a real estate broker to recover a commission under a contract to procure assignments of certain leases for a stipulated price, the title conveyed by said leases to be approved by the purchaser's attorney, where it is shown that assignments of such leases for the price fixed and made to the party contemplated in the broker's contract were procured and tendered during the course of preparation of abstracts of title to the land owned thereby, and the broker's client absolutely and wrongfully signified his refusal to accept said assignments upon the grounds not related to the title and without mention thereof, held, that, in order to recover his commission, the broker is not required to adduce proof that proper abstracts showing good title to the leases so offered to be assigned were tendered to his client or approved by his client's attorney.

**5. Same—Actions for Compensation—Sufficiency of Evidence.**

Evidence examined, and held sufficient as against a demurrer thereto to establish a cause of action.

(Syllabus by Burford, C.)

Error from Superior Court, Tulsa County; M. A. Breckenridge, Judge.

Action by R. C. Rawlings against F. B. Ufer. From a judgment sustaining a demurrer to plaintiff's evidence, he appeals. Reversed and remanded for new trial.

Randolph, Haver & Shirk and R. L. Imler, for plaintiff in error.

Philip Kates and Wm. Blake, for defendant in error.

Opinion by BURFORD, C. Plaintiff sued defendant for a real estate commission. The trial court sustained a demurrer to his evidence, and he appeals. The sole question is whether or not the evidence, as against a demurrer, was sufficient to sustain a cause of action. Upon a demurrer to the evidence the court cannot weigh conflicting evidence, but must consider all evidence as withdrawn which is most favorable to demurrant and determine whether or not liability is proven upon all the facts which the evidence favorable to demurrer in the slightest degree tends to prove and all inferences or conclusions which may reasonably and logically be drawn therefrom. See Rose v. Woldert Grocery Co., 54 Okla. 566, 154 Pac. 531; Rogers Lumber Co. v. Judd Lumber Co., 52 Okla. 387, 153 Pac. 150; Marshall Mfg. Co. v. Dickerson, 55 Okla. 188, 155 Pac. 224; Anderson v. Kelly, 57 Okla. 109, 156 Pac. 1167, and cases there cited. Viewed in this light, it may be said that the evidence established the following state of facts: Ufer approached Rawlings and sought Rawlings to procure certain leases, saying, "Can't you buy these leases for me?" Rawlings replied that he was representing the seller. Ufer then said, "Why can't you act for me?" Rawlings answered that if Ufer would pay him he would "cut loose" from the owner of the lease and represent Ufer. After some conversation in regard to the lease and the commission Ufer said, "If you will buy them at my price I will give you 10 per cent.," and that "I will give you $6,000 for that acreage and give you 10 per cent." A list was then produced upon which Ufer checked off the leases he wanted and indorsed thereon, "Will give $6,000 cash, subject to my attorney approving title, total 383 acres, 10 per cent. commission." Ufer also instructed Rawlings to have the deal closed at Tulsa. Rawlings thereupon got into communication with the owner of the leases and advised him that he (Rawlings) was now representing a client desiring to buy and who would pay him for his services. It seems that the same parties who owned the leases desired by Ufer also owned others in the vicinity, and as an inducement to sell Rawlings held out to the seller, without them disclosing his name, that his client was a large and successful operator, "one of the biggest oil men down there," and that, if the seller would accept the $6,000 offered, such sale to his client of acreage in that vicinity would increase the

value and salability of the other leases held by the seller, by reason of the fact that so large an operator was interested in that locality. The offer was accepted by the seller, and an assignment of the leases forwarded to the Exchange National Bank of Tulsa attached to a draft for $6,000. Ufer was notified, and met one of the sellers at Tulsa, but upon discovering that the assignment was made to him insisted that the papers be sent to the American National Bank of Sapulpa, and that the assignment be made to one Jackson; as he (Ufer) would not have his name appear in the transaction. The owners refused to make the transfer to Jackson, because "we didn't know Mr. Jackson. We didn't know him as an oil man, or as being in the oil business. We did know Mr. Ufer by his reputation, and we wanted him to have the stuff, and not Mr. Jackson or any other one at that time"—and because "we thought it would be better for our leases to have a man like Mr. Ufer own some stuff in there." Shortly thereafter the sellers sold the leases to other parties. Rawlings demanded his commission, and, being refused, brought suit.

Considering the testimony above, we think it a fair conclusion that the contract between Ufer and Rawlings was that the leases were to be produced for and assigned to Ufer for a consideration of $6,000 for the leases and an additional $600 commission to Rawlings. If the written memorandum be regarded as ambiguous in regard to whether or not the commission to be paid was over and above the $6,000 price, then parol evidence was admissible to explain it, and a fair inference may be drawn from plaintiff's testimony that the true construction of the contract was that the commission was not included in the purchase price of $6,000. If the memorandum be regarded as incomplete, then parol testimony not inconsistent with the memorandum was admissible to show the full agreement. As was said by the court in Smith v. Bond, 56 Okla. 112, 155 Pac. 1116:

"Where an oral contract is partially reduced to writing, and the writing evidencing it is not a complete and final statement of the entire transaction, parol evidence not inconsistent with such written contract is admissible to show the full agreement."

To the same effect is Holmes v. Evans, 29 Okla. 373, 118 Pac. 144, where it was said:

"While a written contract cannot be contradicted by parol evidence, it is permissible, where the writing does not purport to set out the entire contract to show by parol other stipulations, not inconsistent with those expressed. Where a contract rests partly in parol, that part which is in writing is not to be contradicted by parol evidence."

The evidence in this case shows that until after the assignment was executed Rawlings' sole dealings were with Ufer. Jackson was not mentioned. Ufer asked Rawlings, "Why can't you act for me?" and "You buy the leases for me?" So, too, Rawlings testified that Ufer instructed him to close the sale at Tulsa. The written memorandum contained nothing in regard to these matters. Under the testimony we think a fair inference might be drawn that the assignment was to be to Ufer, and not to any one else, and that the sale was to be closed at Tulsa.

In this view of the contract, drawn, as above stated, solely from the contract and the testimony most favorable to plaintiff, did Rawlings show such compliance therewith as would justify a recovery of his commission? Defendant in error insists that he did not upon three grounds: First, that the delivery of the assignment to the Exchange National Bank of Tulsa "only amounted to committing them to the case of his (the seller's) own agent, and this in no way constituted a delivery of the lease to Mr. Ufer"; second, that it is not shown that any abstracts of title were submitted by the seller or approved by Mr. Ufer's attorney; third, that there is no competent testimony that Ufer ever refused to take the leases. As to the first contention, no actual delivery to Mr. Ufer was necessary to be shown in order to sustain this action. Delivery was not to be made, except simultaneously, with payment of the purchase price. It was only necessary to show (there being no question of a contract to sell in writing raised in this case) that the seller was ready, willing, and able to deliver in accordance with the terms of the contract between Mr. Ufer and Rawlings, provided none of those terms had been waived or dispensed with by the conduct or otherwise of Ufer, or of both parties. Assuming that the Exchange National Bank was the agent of the seller, nothing is here shown by the plaintiff's most favorable testimony, or in fact by any testimony, giving Ufer the right to dictate whom the seller should employ as his agent to complete the sale, except that the transaction should be closed at Tulsa. The fair inference from the testimony is that the assignments of the leases were delivered to the Exchange National Bank at Tulsa for delivery to Ufer upon payment of the purchase price. This sufficiently shows a present willingness and ability to deliver. It was within the seller's province to designate his own agent at Tulsa without interference from Ufer, and no proof of actual delivery was necessary.

Upon the second point the testimony does

not snow the delivery or tender of any abstracts of title for examination, although it does show that the sellers expected to furnish them. That in the ordinary course of carrying out the contract they should do so, and that the abstracts should show good title and be approved by Mr. Ufer's attorney, is all fairly inferable from the contract. The plaintiff asserts that performance of this portion of the contract was rendered unnecessary by Ufer's conduct in refusing absolutely to take the assignments made to him, and insisting upon their being made to Jackson. This involves the third contention of defendant, as to whether there was any competent testimony that Ufer refused the assignments made to him. Upon the latter point the witness Glover, who was part owner of the leases, and went to Tulsa to see Mr. Ufer in regard to closing the sale of them to him, testified:

"A. Well, I met Mr. Ufer and told him that I had been asked to come up there and give an assignment for the leases, that the assignment was in the bank, and he said he didn't want the assignments to come through this bank, and that it was not for him, it was for Mr. Jackson, and had me call up Mr. Stephens [the owner of the leases] and ask Mr. Stephens to ask the bank to turn over the assignments to me unopened, which was done, and I told Mr. Stephens over the phone that this assignment was to be made to Mr. L. B. Jackson, at Sapulpa, and Mr. Stephens didn't want to do that. * * * Q. You may state whether or not you or Mr. Stephens or both of you refused to execute the assignment to Mr. Jackson. A. Yes, sir; we refused to make an assignment to Mr. Jackson, because we didn't know Mr. Jackson. Q. I will ask you to state whether or not Mr. Ufer at that time made any request or statements with reference to making this assignment of these leases to Mr. Jackson. A. Nothing more than he said he didn't want the assignment made to him; he wanted it made to L. B. Jackson of Sapulpa. * * * Q. Did the defendant, Mr. Ufer, at the time you went to see him about taking up these assignments make any objection to taking them up except that they were made to him instead of being made to Mr. Jackson? A. No, sir; that was his only objection."

The witness Stephens testified very definitely as to Mr. Ufer's refusal to accept the assignment to himself. Upon cross-examination, however, he stated that the matters as to which he testified were not within his own knowledge, but came to him through Mr. Glover, and upon motion the trial court struck out his previous testimony in this regard. However, upon redirect examination he testified as follows:

"Did Mr. Ufer ever admit to you in conversation with you that he had refused to accept

the assignment of the lease here involved in this lawsuit in his own name? Yes, sir."

There was also introduced a letter, Exhibit E. to which an objection was made and sustained, but the defendant later withdrew the objection. It stands here, therefore, as admitted without objection. The letter was from Stephens to Rawlings, and is in part as follows:

"Mr. Glover, who is interested with me in the Pawnee county leases, called on Mr. Ufer for the purpose of making arrangements for the transfer of the leases. Mr. Ufer informed him that the purchase had not been made for him, but for a man named Jackson, who is a resident of Sapulpa, and that under no consideration would he had his name connected with the transaction, nor would he, as he expressed it, 'be known in the transaction for $10,000,' and insisted that the transfer be made to Mr. Jackson. One of the most important considerations which moved me to accept Mr. Ufer's offer for the leases was the consideration that a man well known as a successful operator in the Mid-Continent field had shown his confidence in that locality by having invested his money there, and I felt that, following his lead, others would be prompted to buy in the same vicinity at higher prices than we might obtain had the same block of leases been sold to a man not known outside his own town. We had already sold leases in that locality to two separate interests, one of which was scarcely known, and the other not at all among oil men, and those sales have given us no advantage whatever in the way of attracting the notice of the public to our remaining leases, hence my willingness to sell to Mr. Ufer, and hence my unwillingness to sell to Mr. Jackson."

This evidence was clearly sufficient to at least raise an issue of fact as to whether Ufer had refused to take the assignments made to him and refused to complete the transactions entirely unless the assignments were made to Jackson. Nowhere in the testimony is there any reference to any objection by Mr. Ufer on account of lack of abstracts or failure of title. Under these circumstances was it necessary to sustain plaintiff's case to have adduced testimony that abstracts were prepared and offered for examination?

It is familiar law that a tender is unnecessary when it is reasonably certain that the offer will be refused. The rule is stated in Hills v. National Albany Exchange Bank, 105 U. S. 321, 26 L. Ed. 1052. as follows:

"It is a general rule that when the tender of performance of an act is necessary to the establishment of any right against another party, this tender or offer to perform is waived or becomes unnecessary when it is reasonably certain that the offer will be refused."

This doctrine is adopted and approved by this court in St. L. & S. F. R. Co. v. Richards, 23 Okla. 256, 102 Pac. 92, 23 L. R. A. (N. S.) 1032; Creek Land & Imp. Co. v. Davis, 28 Okla. 579, 115 Pac. 468; and Young v. Blackert, 51 Okla. 285, 151 Pac. 1057.

If, as shown in this record, Mr. Ufer would not "be known in the transaction for $10,000," we think it might be fairly said that it was reasonably certain he would not have accepted the assignments made in his name, even if accompanied by proper abstracts of title approved by his attorney. Clearly, in the first instance, Ufer was not bound to accept assignments of leases upon titles so defective that his attorney could not conscientiously approve them, but, if, before that point in the transaction had been reached, Ufer refused absolutely and wrongfully to take the assignment upon grounds not related to title, and without raising that objection, the furnishing of evidence of such title was waived.

We conclude that as against a demurrer to the evidence the plaintiff's proof was sufficient to sustain a cause of action and that the court erred in sustaining such demurrer.

The cause should be reversed, with directions to the trial court to set aside the order sustaining the demurrer to plaintiff's evidence and to grant a new trial.

By the Court: It is so ordered.