## WOLVERTON v MORGAN.

No. 18215. Opinion Filed July 24, 1928.

(Syllabus.)

1. **Appeal and Error—Chattel Mortgages—Replevin—Question of Tender Before Suit for Jury—Conclusiveness of Verdict.**

A chattel mortgage, containing the usual clauses as to acceleration and insecurity, is given to protect two promissory notes maturing in about two months and twelve months, respectively. The first note is not paid at maturity, but several substantial payments are received thereon without protest at different times, but all within 15 days of the maturity date, and leaving only $25 balance, and where this sum and all interest due is tendered to and refused by mortgagee, who, thereafter, replevies the property and the case is tried upon the theory that the determinative issue was as to whether or not said tender was made, and where the jury, upon fair instructions and upon evidence sufficient for that purpose, finds for defendant, the verdict and judgment thereon will not be disturbed.

2. **Replevin—Erroneous Admission of Testimony as to Tender Later Admitted Without Objection Cured by Instructions.**

It is not reversible error to permit defendant in a replevin suit to testify that, after suit brought, he offered to pay the sheriff the amount due, where similar proof was later introduced without objection, and where the court, in its instructions, clearly informed the jury that the tender, to be effective, must be made before suit brought.

3. **Same—Failure to Instruct on Issues not Pleaded or Proved not Error.**

Where plaintiff did not rely upon the insecurity clause in his chattel mortgage to justify seizure of the property, and there is no pleading or sufficient evidence on this phase of the case, a general charge of the court omitting reference thereto and where there are no special instructions thereon requested by plaintiff, is not reversible error.

4. **Appeal and Error—Verdict Sustained.**

Evidence examined; held, that same supports the verdict and judgment.

Commissioners' Opinion, Division No. 1.

Error from District Court, Grady County; E. L. Richardson, Judge.

Action by J. P. Wolverton against N. M. Morgan in replevin to recover personal property covered by chattel mortgage. Defendant answered and filed cross-petition for damages for wrongful taking of property by plaintiff. Judgment for defendant for $200. Plaintiff appeals. Affirmed.

Ben Goff, for plaintiff in error.

Barefoot & Carmichael and R. E. Davenport, for defendant in error.

BENNETT, C. This is an appeal from district court of Grady county. J. P. Wolverton, as plaintiff, brought suit to recover possession of a Ford truck under a chattel mortgage securing two promissory notes made October 20, 1924, one of which notes was for $150, due December 1, 1924, the other for $264, due October 1, 1925, the payment of which was secured by a chattel mortgage covering the Ford truck and also certain crop of cotton. At the beginning of the suit said Wolverton replevied and took possession of said truck on the 19th of January, 1925.

The petition alleges the execution and delivery by defendant to plaintiff of the notes and mortgage, copies whereof are made part

thereof. The default alleged is that the defendant failed to pay $150, due December 1, 1924, in full; that $25 of the same and interest thereon is yet due and unpaid, and that, according to the terms of the mortgage, the failure to pay any part of said debt when due renders the whole debt due and collectible. The note and mortgage are in the usual form and the mortgage contains the provision that if default shall be made in the payment of said note or notes or the interest thereon, or if the mortgagee shall deem himself unsafe or insecure, the whole sum secured thereby shall, at the option of the mortgagee, become at once due and payable, and foreclose. The answer is, first, a general denial, and second, that payments were made by defendant on the $150 note sued on by plaintiff as follows: On December 3, 1924, $75; on December 5, 1924, $25, and on December 16, 1924, $25, and that on the morning of January 19, 1925, and before suit was filed, defendant's wife, acting for defendant and as his agent, tendered to plaintiff $27.50, the balance due on said note, together with all interest due, which was the balance due at the time, but that plaintiff refused to accept said money, and thereafter, on the same day, sued· defendant and replevied the property.

Defendant says that he has always been ready, able and willing to pay this money, and tenders same into court; he alleges that on account of the tender made and the refusal to accept the same, that said suit is prematurely brought; further alleges that one S. A. Cline, being indebted to defendant, and at his instance and request, called plaintiff and asked him to wait for balance of $150 note until January 21, 1925, and if that were not satisfactory the said Cline or the defendant would pay said balance .that day; that plaintiff, with intent to wrong defendant, agreed to wait until said January 21, 1925, otherwise the amount of money would have been paid, and that plaintiff's promise to wait until said time was wrongful, malicious and with intent to injure defendant, but that defendant relied upon said statement, and that plaintiff is now estopped to deny same.

Defendant thereafter sets out a cross-petition for $750 for wrongful taking of the truck from the defendant, which was worth $5 per day, and for exemplary damages and general relief. The court held the burden was upon defendant, and his evidence. in substance, tends to show: That N. M. Morgan bought the truck from the plaintiff in October, 1924, for $585, and paid down $75 in cash and gave a post-dated check for $100 which was paid a few days later. For the balance of the price he executed two notes, one for $150, due December 1, 1924 (upon which are indorsed credits as follows: December 3rd, $75; December 5th, $25, and December 16, 1924, $25); the other for $264, due October 1, 1925; both secured by mortgage on the truck and cotton crop. That the truck was replevied on Monday, January 19, 1925. On the Saturday before suit defendant saw Mr. Cline and had him telephone to the plaintiff, and Mr. Cline reported to defendant that everything was all right and on the morning that the truck was seized, plaintiff and one of his employees came to see defendant at his home to collect the amount due and shortly thereafter he went down to plaintiff's place of business and asked plaintiff to accept a check for $40 which one Hobbs had authorized defendant in writing to draw upon him through the bank at Verden. Defendant wished to get out of this check about $15 cash and to apply balance or so much as might be necessary to take up balance due on the $150 note. Hobbs was at that time owing defendant $50 or $60, but plaintiff refused to receive it. This conversation was had with and the offer made to Mr. Sullivan, plaintiff's credit man, Mr. Wolverton not being present. Later defendant went to cotton fields and the same day the sheriff and an employe of plaintiff took the truck from defendant. After they took the truck defendant begged them to take the money that he was due them, but they would not do it. Defendant tried to secure a redelivery bond, but failed. He did execute a redelivery bond. which the sheriff approved and gave him a ticket with directions to go to Wolverton and get the truck back, but when defendant applied to plaintiff for the truck, Sullivan, plaintiff's credit man, refused to deliver same. Defendant went back to the sheriff, who sent him back again with instructions to have the plaintiff call up about the bond, but they would not and did not deliver the truck. The defendant testified as follows:

"Q. You went back to Wolverton's? A. Yes, sir. Wolverton was sitting in his office; he says, 'Morgan, you came back up here after my truck again:' I said, 'Yes, sir, after my truck'; he says. Lou can't get that truck, that truck is done sold,; and he says. 'Furthermore I would put up the worth of the truck in cash before you get it'; and I says, 'Well, I guess if that is the case I couldn't get it.' "

WOLVERTON V. MORGAN57

The reasonable value of the truck was $8 or $10 a day. That the truck was worth $450 at the time it was taken from him.

S. A. Cline, witness for defendant: Knows when the truck was taken; was indebted to defendant $30 or $35 and that at the request of defendant witness called Mr. Wolverton and asked if he would hold the note that he had for $25 against Morgan until the following Wednesday. He said that he would and witness explained to him that if he would not do it, he would get the money that day, and that if he had not agreed to that, he would have paid the money that day. Wolverton said that it would be all right to hold it until Wednesday. Witness told Morgan what Wolverton said that morning. The reason witness wanted to delay payment was that he had promised to pay something on a bill of supplies and he wanted to use the money until Wednesday. He had four or five bales of cotton to sell, but did not wish to sell it right away.

W. H. Hobbs, for the defendant, says: That he owed the defendant $50 just before the truck was taken from him; that witness gave Morgan written authority to draw on him for that sum. This was on Sunday before the truck was taken on Monday. Saw the defendant on Monday and paid him $51, the amount of this debt.

O. E. Harris testified that he bought the truck in controversy from Wolverton about March 24th and paid him $400 for it. It was in pretty good condition and showed no indications of having been overhauled. The value of the truck with driver was $10 per day.

Theodore Morgan, witness for defendant: Was present when Mr. Sullivan declined to accept the check. Witness' father came out then and sent witness back home to tell his mother to go to town and take up the note. That was right after the conversation between witness' father and Wolverton in the latter's office.

Mrs. Della Morgan, wife of defendant: Recalls the circumstances of the car being replevied by Mr. Wolverton; she was living in Chickasha and that early in the morning about 8:30 of the day the car was replevied witness' son came to her with a message from Mr. Morgan and that in obedience to that message she went down to see Mr. Wolverton and, when she went in, Mr. Wolverton was busy, and when he was through he walked over and asked if there was anything he could do, and witness said, " 'I come over to take up our note'; he said, 'Your hus-

band was just in here and said he would turn the truck over to me to sell.' He seen I was worried, and he said, 'You needn't worry one minute, the truck will be all right'; and I said 'All right.'

"Q. * * * The boy delivered a message to you from your husband? A. Yes, sir. Q. And in obedience to it you went to pay the money, the balance on the note? A. Yes, sir, and he wouldn't accept the money. Q. Did you offer him the money? A. Yes, sir, I offered him the money."

Cross-examination: Witness had with her that morning sixty odd dollars in cash. She had sold some chickens during the week. She removed from the farm some time about the first of January. She sold her chickens after she came to town.

Messrs. Gregory, Powers and Graham are introduced as witnesses for defendant and they testify that the car was in good shape when replevied.

At the conclusion of defendant's testimony the plaintiff demurs thereto and says that there is no evidence of any consideration passing for the alleged extension of the time for the payment of said note; that there is no evidence of a legal or lawful tender of the amount due on said note prior to the institution of the suit. This demurrer and a motion for instructed verdict were overruled.

The plaintiff's evidence was, in substance, as follows:

Lee Slade, a collector for plaintiff, remembers the occasion of the replevin of the Morgan car; went down to Morgan's home the morning the car was taken in an effort to collect what was due; did not see Mr. Morgan then, but saw him later at Wolverton's place of business. Does not remember all the conversation that occurred between Wolverton, Sullivan and defendant, but that defendant drove off in the truck; that the radiator was bursted and the block leaking; tires were pretty well worn.

W. P. Sullivan, sales manager for Mr. Wolverton: Remembers replevying the Morgan truck. On the morning the car was taken, witness saw Mr. Morgan at his home and also at Wolverton's place of business. Down at the house Mr. Wolverton did most of the talking. Wolverton told defendant to pay for the truck or not take it out of town. Morgan said he would come by our place and he came. All of us talked when he came up to the place of business. Wolverton told defendant to pay for the truck or not move it. It was then in front of

the place of business. Defendant offered to draw us a check on the Verden bank in the name of Mr. Hobbs, but we would not accept it. The truck was in bad condition. Had a leak in the radiator. It had been frozen up. After we refused to accept the Hobbs check defendant went to the country and Mr. Wolverton immediately got out replevin papers. Defendant had written authority from Hobbs to make the check.

Cross-examination: The note lacked just $25 being paid and the second was due almost a year from then.

J. P. Wolverton, plaintiff, testified in substance that he is engaged in sale of Ford automobiles; remembers the sale of the truck to Morgan; that he paid $75 in cash and gave a post-dated check which was paid soon afterwards, and a note for $150 due December 16, 1924, and a second note for $264 due about a year thereafter. Thinks he had the conversation with Mr. Cline from Verden, but could not hear well; that the party said he would bring the money that Morgan was owing on the note that day and witness said that was all right. Did not agree to wait until Wednesday. Nobody came that day. Witness went to Morgan's house about 8 or 8:15 o'clock Monday morning; went to collect the balance on the note and balance of $12 on a check.

"Q. And part of your mission was an effort to collect that check? A. Yes, sir, the balance of it. Q. What was the balance? A. To try to collect the $25 and interest due on the note."

Plaintiff saw Morgan that morning, but Morgan had no money; had some coming; he would be up to the sales room and either get the money or leave the truck, something to that effect. He came up to the sales room and witness said the note would have to be paid or he wanted him to leave the truck there, and he offered to draw a check, but Mr. Sullivan consulted witness about it and same was refused unless the bank would agree to pay it. He wished to draw the check for $40. Witness knows Mrs. Morgan by sight. If she came to witness' office, he did not see her. She did not come there.

When the truck was taken it needed repairs. Witness had it repaired at an expense of $252. A month or six weeks thereafter sold the truck for $400. Used the truck for hauling freight and for a few trips to Oklahoma City while he had possession of it.

Upon conclusion of the evidence the case was submitted to a jury, who, after being instructed by the court, returned a verdict in favor of defendant for the sum of $200, upon which judgment was rendered by the court and from which the plaintiff appeals. Plaintiff presents his contentions under four propositions, which we will consider in order.

First. The verdict and judgment was contrary to law.

Under this proposition the plaintiff argues that he was entitled to the immediate possession of the machine under his mortgage because plaintiff had the option to declare the whole debt due upon failure of defendant to pay all of the first note, and second, that under the provisions of the mortgage he was entitled to possession of the property covered if he felt insecure as to the security for his debt. He cites several Oklahoma cases: Western Newspaper Union v. Thurmond, 27 Okla. 261, 111 Pac. 204; Nichols & Shepherd Co. v. Dunnington, 118 Okla. 231, 247 Pac. 353, and Wertz v. Barnard, 32 Okla. 426, 122 Pac. 649.

The correctness of the holding of the court in these cases will not be questioned, but upon examination of this record it seems clear to us that the plaintiff did not exercise his option to declare the entire indebtedness due, and there is no allegation or proof that the plaintiff rested his case upon the theory that he felt himself insecure. It is true he set out in his petition a copy of the mortgage and in paragraph 3 of his petition he says that according to the terms of said mortgage the failure to pay any part of said debt when due renders the whole debt due and collectible, but this is all. There are no words to the effect that he elects to declare the whole sum due or to declare a default as to the note, which lacks many months of being mature. There is no provision in the notes accelerating their maturity dates. The course of conduct of plaintiff is not in keeping with his present contention that he declared the entire debt due. For example, the $150 note was due December 1, 1924, but he declared no default. He accepted payments thereon on December 3rd, December 5th and on December 16th, which left a balance of only $25. Plaintiff went to defendant's house on the morning of the institution of the suit confessedly to collect $25 and the interest on it, amounting, in all, to about $27. Not a word was said about the $264 note, and when the defendant offered to pay the amount due by $40 check of Hobbs and receive the balance of about $15 in money, the refusal of plaintiff was based upon his unwillingness to

accept Hobbs' check and not upon the ground that the amount was insufficient.

Furthermore, the testimony of Cline indicates that he was seeking to have plaintiff postpone the collection of the $25 balance on note due by defendant until Wednesday. There was no contention that the amount was not correct, even by plaintiff, although he says that he did not hear well and understood Cline to say he would pay that amount on that date. In addition the testimony of Della Morgan was clear-cut to the effect that she offered to pay the plaintiff simply the balance on the first note and no objection as to the amount was made by plaintiff to her. She carried sufficient money for that purpose and her offer was refused on the sole ground that some other arrangement had been made by the defendant. Finally, the bulk of the testimony in this case concerns or points to the issue as to whether or not this tender was made, plaintiff contending that it was not made, the defendant contending that it was, and the instructions of the court are likewise mainly directed towards this one issue. We think, therefore, that it is entirely clear that the plaintiff tried his case upon the theory that this issue as to the tender was the crucial and determinative issue in this case, and it is the rule here that where a party tries his case upon a certain theory in the trial court, he will be confined to that theory here. Doggett v. Doggett, 85 Okla. 90, 203 Pac. 223; Kennedy v. Beets Oil Co., 105 Okla. 1, 231 Pac. 508.

As to plaintiff's contention that he felt himself insecure and therefore he was entitled to possession of the property, we simply say there is neither a word of pleading nor a word of proof that warrants the conclusion that plaintiff felt himself insecure, unless we draw that conclusion from the statement that the radiator and block leaked and needed repairs and the tires were half worn out. We are not justified in so doing in the face of opposing testimony to the effect that the truck was in good condition and required no repairs. The second-hand truck was bought for $585 in October and by the middle of December the defendant had paid thereon $300. A mortgagee cannot arbitrarily take possession under the "insecure" clause in a chattel mortgage, but he must deal fairly with his mortgagor. There is abundant proof here that the truck was in good condition.

Second. The court erred in admitting incompetent, irrelevant and immaterial testimony.

The court, over the objection of plaintiff, admitted this question:

"Q. Now, Mr. Morgan, did you at this time offer, after you got there, offer to pay the balance on this note? By Mr. Hammerly: Objected to as immaterial, it was after the suit was filed. A. Yes, sir."

Later on the following question was asked and answered without objection:

"Q. Did you offer to pay the balance on this $150 after they took your truck? A. Yes, sir, I begged them to let me do it."

It will be observed that the second question is not identical with, but is more general than the first question. The charge of the court specifically directed the jury that the tender relied on, to be effective, must have been made before suit was filed. Whatever error there might have been in admitting the testimony could not have been harmful under the final charge of the court with reference to tender.

Third. The court erred in giving instruction No. 6, which is as follows:

"The court instructs the jury that if you find and believe from the evidence in the case that after the maturity of the note according to its face and prior to the filing of this suit, the defendant either tendered or caused to be tendered to the plaintiff, the full amount of the principal and interest on the note for $150, or the balance due thereon, and that the plaintiff refused to accept the same and thereafter brought this suit, then, in that event, the plaintiff cannot recover in this action and your verdict should be for the defendant for the return of the truck, or in case a return thereof cannot be had, then for its value at the time it was taken, less any indebtedness then existing against it to the plaintiff, whether due or not, for such an amount of actual damages as you may find and believe from the evidence to be the reasonable cash value for the use of said car since the same was so taken from him, to wit, on the 19th day of January, 1925, not to exceed $5 per day. Excepted to by plaintiff and exceptions allowed. E. L. Richardson, Judge."

Plaintiff complains that this ignored plaintiff's right to possession of the property under the accelerating clause in the mortgage. This point needs no further discussion, as we have dealt with same.

He says that the instruction left it entirely to the jury as to what facts were

necessary to constitute a tender. The court charged upon the question of tender, and if plaintiff was dissatisfied, he should have asked an additional or special charge thereon. We cannot think the jury were misled as to the law on the question of tender. The evidence on the subject was brief and to the point. Mrs. Morgan testifies that she made the offer to pay the note with the cash in hand to do it, but that the plaintiff refused to accept it. The plaintiff says that no such conversation occurred; that the offer never was made. That raised an issue of fact. In the case of Young v. Blackert et al., 51 Okla. 285, 151 Pac. 1057, it is held, in substance, that where the tender of performance of an act is essential to the establishment of any right against another party, such tender or offer to perform is waived, or becomes unnecessary when it is reasonably certain that the offer will be refused. We have no way of knowing whether or not this tender was made, but there was sufficient evidence on the issue to require the finding of a jury, and they have made their finding under instructions which appear to us fair to plaintiff.

Fourth. The court erred in refusing plaintiff's offered instruction No. 1, which was for a directed verdict.

Plaintiff says there was no evidence of a tender prior to suit and that the evidence is insufficient in law, even if believed, to constitute a tender, and further, that if such tender were made, it was made after suit was brought. We cannot assent to these contentions. The tender was not highly technical and perhaps the evidence was not as satisfactory as it might be, but it was a sufficient offer to pay the balance due, and if Mrs. Morgan offered in good faith to pay it and the plaintiff refused, under the case of Smith-Wogan Hdwe. & Imp. Co. v. Bice, 34 Okla. 294, 125 Pac. 456, the lien of the mortgage as to that note was discharged, and, under our holding that this was the only amount at that time sought to be collected by plaintiff, defendant was no longer in default.

The contention that this tender, if made, was made after suit brought, does not conform to the proof. Plaintiff says he went to Morgan's home about 8 or 8:15 on Monday morning, and after a while Morgan came by plaintiff's place of business and they talked there a while. Mrs. Morgan's testimony is that she received a message from her husband to go and pay the note a little while after Morgan left, and that she was at Wolverton's place of business and made the tender about 8:30 o'clock on the same morning,—as she puts it, when the children were going to school. If those are the facts, we think it well nigh impossible for plaintiff to have filed his suit in replevin with all the necessary papers before 8:30 o'clock on that morning. But whatever we think about it, it nevertheless was one of the questions that the jury was called upon to decide.

Plaintiff, as another phase of his four propositions, contends that if the tender were in fact made, it was not made at the Oklahoma National Bankk of Chickasha, where the note was payable. Plaintiff was going to defendant's home to collect this note and asking him to come to his office to pay it. There is no merit whatever in plaintiff's contention in this respect.

Finally, as to plaintiff's motion for a directed verdict, we have examined the evidence and pleadings with care, and also the record. There is much evidence which tends to sustain the verdict. Not all of it is entirely satisfactory, but that goes to the weight of the testimony. The evidence is sufficient to warrant the verdict, and we are convinced that no substantial error has been made as against the plaintiff.

For the reasons given, the judgment of the trial court is affirmed.

TEEHEE, REID, DIFFENDAFFER, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 3 C. J. p. 718, §618. (2) 4 C. J. p. 983, §2962. (3) 4 C. J. p. 1049, §3031, 4 C. J. p. 852, §2834.