SHORES LUMBER COMPANY, Appellant, vs. STITT and another, Respondents.

*February 25 — March 14, 1899.*

*Contracts: Construction: Conveyance of railroad property: Logs and logging: Custom.*

1. At the time of making a contract by which defendants were to cut and deliver large quantities of logs each year for several years at plaintiff's sawmill, it was agreed that defendants should purchase from plaintiff, among other things, a logging railroad and its equipment, then used in carrying logs to said mill. A bill of sale was executed, conveying in general language all of plaintiff's camp and logging outfit, with a specification of the different kinds of property of which said outfit consisted, the description therein of the railroad property being as follows: "One locomotive, eighteen cars, and all the rail and railroad material of every name and nature." Thereafter plaintiff turned over the railroad property as it then existed to defendants, and it was used by them for a considerable time, and until trouble arose between the parties, with no intimation that the transfer did not include the right to use the bed on which the rails were laid. *Held,* that the bill of sale, when viewed in the light of the transaction of which it formed a part and of the practical construction given it by the parties, conveyed the right of way of the railroad.

2. A written contract for the cutting of pine timber, requiring that it be cut "in a workmanlike manner," refers to the customary manner of cutting such timber at the place of the contract, and prior conversations as to the method of doing such work elsewhere cannot be considered as forming any part of the agreement evidenced by the writing.

3. In determining the meaning of words or terms used in a contract, the custom or usage of the place of the contract governs, whether both parties knew of such custom or not. The place of the contract is the place of its making, unless its terms indicate another place for performance.

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

Action for damages for breach of contract and to recover for the use of the right of way of a railroad. The case was

tried by a referee who found the facts as to the various claims for damages and for the use of the railroad right of way in favor of the defendants, and found that there was a sum of money due the defendants on counterclaims pleaded by them, which findings were approved by the trial court, and in accordance with which judgment was rendered.

The evidence in the case is very voluminous and the findings of fact numerous. To give a complete history of the cause would require a very long statement. Only such statement will be made as appears to be necessary to present the controverted questions of law and fact as they appear in this court.

The contracts called for the cutting, hauling, and delivering of 35,000,000 feet of logs per year for several years. The referee found that the contracts were modified by parol as to the annual amount to be delivered. Damages were claimed for failure to deliver 35,000,000 feet of logs per year, but were disallowed because of the parol modification mentioned. The fact as to the modification is controverted on this appeal on proper exceptions to the findings.

As a part of the transactions between plaintiff and defendants in making the logging contracts, it was agreed that the latter should purchase of the former a logging railroad and its equipment. The transaction in that regard was consummated by a written bill of sale, which contained no other description of the railroad property except the following: "One locomotive, eighteen cars, and all the rail and railroad material of every name and nature." At the time the bill of sale was made there was a logging railroad four and one-half miles long, equipped with a locomotive, rails, and cars, constructed for use and in use in carrying on logging operations to stock plaintiff's sawmill, which it was designed defendants should continue, and which they agreed to do as a part of the transaction which called for such bill of sale. After the making of such bill of sale the

entire railroad property was delivered to defendants, and no claim was made that any interest therein was retained by plaintiff till after the contract relations between the parties had ceased. As an inducement to defendants to purchase the railroad property, plaintiff represented to defendants that there would be an opportunity for them to haul outside logs at a profit. The claim in suit was that the right of way of the railroad was not sold and that plaintiff was entitled to compensation for the use of it in hauling outside logs. The referee found that the entire railroad property was conveyed to defendants, and that plaintiff was estopped from claiming otherwise because of the representations made before the sale, that defendants would be enabled to use the property profitably for hauling outside logs. Exceptions were duly filed to the court's findings in regard to these matters.

The contract required the logs to be cut in a workmanlike manner. A large claim for damages was made for waste of timber by the defendants in cutting the trees too high. Plaintiff claimed that the customary way of cutting timber in Michigan was in contemplation by the parties when the contracts were made, which was to cut the trees down lower than was customary where the logging operations in question were performed. That was denied by the defendants. The court held that, the place of the performance of the contract being in the vicinity of Chequamegon Bay, Bayfield county, the customary way of cutting timber there governed, and that the work under the contracts was done in a workmanlike manner tested by the usual method of cutting timber in that locality; that as operations progressed trees that were considered by plaintiff's employees to be cut too high were designated by them and the loss determined and charged to defendants. Exceptions were taken to the findings and conclusions of the court in respect to this claim for damages.

So, as the case stands in this court, appellant claims that the findings of fact should be modified so as to award to it damages for failure to deliver 35,000,000 feet of logs per year, compensation for use of the railroad right of way, and for the loss of timber by reason of the trees being cut too high from the ground.

For the appellant there was a brief by *Cate, Sanborn, Lamoreux & Park,* and oral argument by *B. B. Park.*

For the respondents there was a brief by *Gleason & Sleight,* and oral argument by *E. F. Gleason.*

MARSHALL, J.   The first assignment of error is that the circuit court erred in finding a parol modification of those portions of the written contracts which required a delivery of 35,000,000 feet of logs per year.   Whether such modification was made or not was a question of fact, and the finding in regard to it is binding on this court unless we can say it is against the clear preponderance of the evidence.   After a careful consideration of that part of the record bearing on the subject we are unable to disturb the decision of the trial court, testing it by the rule referred to.   To our minds the evidence fairly preponderates in favor of such decision rather than against it.

The next contention made is that plaintiff did not convey to defendants the railroad right of way, and that the finding on that subject is wrong; hence that the failure to allow plaintiff compensation for the use of such right of way is also wrong.   Whether that finding is correct or not turns on the construction of the bill of sale.   That seems to convey the entire railroad property, when viewed in the light of the circumstances of the transaction of which the making of it formed a part, and in the light of the construction which the parties themselves gave to the instrument.   That such instrument will admit of two constructions is quite evident.   The descriptive part is very general.   First, there is

language conveying all of the plaintiff's camp and logging outfit, and that is followed by specifications of the different kinds of property intended by the general language, which, as to the railroad property, is in the following words: "One locomotive, eighteen cars, and all the rail and railroad material of every name and nature." The railroad property consisted of a right to use the bed upon which the rails were laid, and the rails and railroad equipment as well. It was one entire property in use and for use in the logging operations necessary to the furnishing of stock for plaintiff's sawmill, which was the purpose of the contracts with the defendants and the conveyance of such property to them by the bill of sale. In carrying out the terms of the bill of sale, the railroad property as it then existed was turned over to defendants and was thereafter used by them up to the time of the trouble out of which this litigation grew, without any intimation on the part of plaintiff that the transfer did not include the entire railroad outfit. It appears very plainly that such was the intention and that such intention may fairly be attributed to the language of the bill of sale, in the light of all the circumstances leading up to the making of the logging contracts and what occurred afterwards, as we have before stated. That was the conclusion of the trial court, with which we fully concur.

It is further contended that the customary way of cutting pine timber in Michigan was discussed between the parties at the time of and before the making of the contracts, and became a part thereof, and was referred to therein by the requirement that the timber should be cut in a workmanlike manner. The contracts were made and to be performed in the vicinity of Chequamegon Bay, Wisconsin. We know of no rule of law that will sustain the contention that a custom existing at some other place, quite remote from that of the contracts, can be said to have been in the minds of the parties and to have become a part of such contracts. Where

no particular manner of performing a contract is specified in it, the usage at the place of the contract is essentially a part of it, the same as though actually written into it. If we were to test the requirements of a written contract by the usage at some other place than that of its performance, it would involve a violation of the well-settled rule of law that the latter place governs, and that other rule that the terms of a written contract cannot be varied by parol.

The learned counsel urged with confidence the rule that a custom, in order to be binding between parties to a contract, must be brought home to the knowledge of both of them, either by showing actual knowledge on their part at the time of the making of such contract, or the existence of the custom for so long a time as to raise a presumption that they had such knowledge and entered into the contract with reference to it. That rule of course prevails in case of an attempt to annex to a contract some incident not expressed therein, as in the case of *Hewitt v. John Week L. Co.* 77 Wis. 548, where the question was whether the owner of a sawmill, under his contract to saw logs by the thousand, was entitled to the slabs. There is a difference between evidence of usage to establish a custom for the purpose of annexing that as an incident to a contract, and the same kind of proof to show the meaning of some word or term used in a contract. In the latter situation the meaning of the term as understood at the time and place of the contract governs, whether both of the parties knew of such meaning or not. They are presumed to contract with reference to the meaning of words and terms used by them, as such words and terms are understood at the place of their contract; therefore, proof of such meaning is all that is required to enable the court to determine just what the language of the contract was intended to express. That is the effect of *Walker v. Syms* (Mich.), 76 N. W. Rep. 320, cited by respondents' counsel, and the doctrine is elementary. Jones, Com. & Tr. Cont. § 63.

The expression "place of the contract," as used here, means the place of its making, unless its terms indicate another place for performance; then such other place is the one called for by such expression, and the parties are presumed to have agreed to be governed by the usage at such place, as to the interpretation of words and terms requiring that in order to determine the meaning of the language used by them, as effectually as if such agreement were plainly expressed in the contract.

It follows that the decision of the trial court was right in holding that the term "workmanlike manner" referred to the customary way of cutting timber in the vicinity of Chequamegon Bay, the place of the contract, and that conversations as to the method of doing such work elsewhere could not be considered as forming any part of the agreements evidenced by the writings.

The foregoing disposes of all the questions that could be profitably discussed in this opinion. No error is perceived in the record.

*By the Court.*— The judgment is affirmed.