Argued January 13, decided February 8; rehearing denied April 26, 1910.

## HOLLAND v. RHOADES.

[106 Pac. 779.]

CONTRACTS—ACTION FOR BREACH—ISSUES.

1. Where the complaint alleged a contract to erect three cottages for defendant, and that defendant prevented plaintiff from erecting two of them, to his damage, and the answer alleged that the parties mutually rescinded the contract as to two of the cottages before their construction was commenced, and agreed that it should apply only to the one first constructed, defendant could not show that the parties agreed that plaintiff should proceed to construct one house until it was inclosed, with the privilege of constructing the other two at defendant's option; that not being within the issues.

CONTRACTS—ACTIONS—ISSUES.

2. Where defendant admitted in his answer the contract as alleged in the complaint, he could not afterwards show that the contract was different from that alleged and admitted.

EVIDENCE—PAROL EVIDENCE—CONTRADICTED CONTRACT.

3. Where a written contract did not provide for rescission, defendant could not show by parol an agreement permitting rescission by the parties, made at the time the written contract was executed.

CONTRACTS—RESCISSION—NATURE.

4. The mutual rescission of a contract is the discharge of both parties from the legal obligations admittedly existing thereunder, by a subsequent agreement made before the performance of the original contract, and is distinct from the right to rescind, so that a rescission could not be shown by proof of the right of rescission.

CONTRACTS—BUILDING CONTRACTS—CONSTRUCTION—"GOOD, WORKMANLIKE MANNER"—"WORKMANLIKE"—"SKILLFUL."

5. A contract to construct buildings in a "good, workmanlike manner" meant that it was to be constructed with fair average skill, considered in relation to the character of the work, and not with the highest skill known to the carpenter trade; "workmanlike" meaning worthy of a skillful workman, well-executed, skillful, and "skillful" being defined as having ability in a specified direction, experienced, practiced.

From Washington: THOMAS A. MCBRIDE, Judge.

Statement by MR. JUSTICE SLATER.

S. M. Holland, the plaintiff herein contracted with defendant, C. Rhoades, to erect for him three one-story, five-room cottages of like design, at the agreed price of $1,177.25 each. He entered upon the execution thereof by beginning the erection of one cottage. Thereafter, on April 13, 1907, the terms of the contract were reduced to writing, and signed by the parties. Plaintiff now sues to recover damages for breach of contract by the defendant, who, it is alleged, on the 20th day of April, 1907, prevented and prohibited plaintiff from erecting two of said cottages.

The answer admits the contract alleged, but denies all other averments of the complaint, affirmatively alleging, in effect, that on April 20th the day on which the alleged breach by the defendant occurred, the parties mutually rescinded the contract, so far as it applied to the erection of the two cottages the construction of which, at that time, had not been commenced, and that they agreed that the written contract should apply only to the cottage on which the plaintiff was then working.

The reply put the new matter of the answer at issue. The trial resulted in a verdict for plaintiff, and from the judgment entered thereon, defendant has appealed.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. W. N. Barrett.*

For respondent there was a brief over the names of *Messrs. Bagley & Hare* with an oral argument by *Mr. W. G. Hare.*

MR. JUSTICE SLATER delivered the opinion of the court.

1. But two questions are presented for decision. The first arose upon a refusal of the court to permit defendant to state the terms of the contract for the construction of the cottages, to the effect that their mutual understanding was that plaintiff was to proceed with the construction of one house until it was inclosed, with the privilege of constructing the other two at defendant's election. This was not within the issue made by the pleadings.

2. By the contract alleged in the complaint and admitted by the answer, plaintiff had the right to erect, and defendant was bound to take and pay for, three one-story, five-room cottages. No privilege was reserved therein to the defendant to withdraw from the contract when one building had been erected; he was bound to a full performance, unless excused by a mutual rescission, or by a rescission by himself, based on a default of the plaintiff. He chose to defend upon the ground of a mutual rescission, and that was the only issue to be tried.

3. The evidence offered does not tend to the proof of a mutual rescission of the contract assumed to be in force between the parties, but of his understanding of what terms the original contract itself consisted at the time it was made, and before it was reduced to writing. The testimony not only contradicts the admissions and averments of the answer, but also varies the terms of the written contract itself, which was introduced in evidence, and is in the record. It needs no citation of authorities

to sustain the proposition that defendant was thus precluded, by the admissions contained in his answer, as well as by the writing, constituting the sole evidence of the contract, from making such proof.

4. It is argued, however, that it was admissible because it would tend to explain plaintiff's and defendant's actions, occurring at the time of the alleged rescission. The record does not contain any of the evidence constituting the alleged rescission, and hence we cannot judge of that matter, but the argument of counsel is evidently based upon the assumption that the parties, at the time of the alleged rescission, must have acted upon the idea that defendant had the right, by previous contract, to withdraw therefrom. In other words, defendant sought to prove a personal right to rescind by parol proof of a stipulation, made at the time of the negotiation of the terms of the original contract, which stipulation was not included in the written agreement. But the right to rescind is distinct from the fact of rescission: *Seanor* v. *McLaughlin,* 65 Pa. 150 (30 Atl. 717: 32 L. R. A. 467). The former does not constitute an element of mutual rescission, which is the discharge of both parties from the obligations of a contract assumed to be in existence and to be legally binding, by a new agreement made by them subsequently to the original contract, and before performance thereof is due. 9 Cyc. 593. There was no error in rejecting the testimony.

5. There was received in evidence testimony, offered by plaintiff, tending to show the cost of the construction of the cottage built by him, so as to exhibit the profits that he would have made had he constructed the remaining two cottages. The question arose as to whether the cottage, erected by plaintiff, had been constructed in a good, workmanlike manner, in accordance with the terms of the contract; the defendant claiming it had not been so constructed, so the question as to what was meant by the

terms "good, workmanlike manner" became material to the cause. The court gave this instruction:

"Good and workmanlike manner means in such a way that a workman of average skill and intelligence, the conscientious workman, would do the job. It is good average work. Workmanlike, is good, average work. It is good work, taking a man of average skill, not a wood-butcher on one hand, nor the very highest skill on the other, but a man of fair average skill as a carpenter; what a man of fair average skill would do. That is, what is considered the work of a man of good, workmanlike ability would do. It is for you to determine that."

Defendant excepted to the instruction, claiming that "good, workmanlike manner" means more than good average work, or the work of a man of fair average skill as a carpenter. But we are of the opinion that the instruction is substantially correct. "Workmanlike" is defined in the Century Dictionary to mean: "Like or worthy of a skillful workman; hence, well-executed; skillful"—and skillful is defined as "having ability in a specified direction; experienced; * * practiced." But there are different degrees of skill, and when the parties used the qualifying adjective "good" to denote the degree of skill demanded in the performance of the contract, they thereby recognized that difference, and signified it was not the highest skill known to the trade of carpentry that was to be used, but a fair average skill, when considered in relation to the character of the work to be done.

The judgment is affirmed. AFFIRMED.