**FAIRBANKS, MORSE & CO. v. MILLER et al.**

No. 9934—Opinion Filed Jan. 25, 1921.

Opinion Denying Rehearing Filed March 8, 1921.

(Syllabus by the Court.)

**1. Trial—Demurrer to Evidence—Effect.**

The test applied to a demurrer to the evidence is that all the facts which the evidence in the slightest degree tends to prove, and all inferences and conclusions which may be reasonably and logically drawn from the evidence, are admitted, and the court cannot weigh conflicting evidence, but must treat that as withdrawn which is most favorable to the demurrant.

**2. Contracts — Performance — Tender—Waiver.**

When the tender of performance of an act is necessary to the establishment of any right against another party, this tender or offer to perform is waived or becomes unnecessary when it is reasonably certain that the offer will be refused.

**3. Sales—Failure of Warranty—Reasonable Time to Rescind—Question for Court or Jury.**

Generally the question of what is a reasonable time to offer to rescind and restore or offer to restore merchandise upon failure of warranty is a question of fact, which should be submitted to the jury; but where it is apparent that the delay is so long as to be unreasonable, then the court should so decide, as a matter of law.

**4. Same—Jury Question.**

Where a note was given for a part of the purchase price of a tractor under a written warranty and in a suit upon the same the defendant as a defense pleaded the note was without consideration, in that the plaintiff had breached the warranty because of defects in the tractor which rendered it worthless, and it developed upon the trial that the defendant had discovered the defects complained of before the note matured and with such knowledge requested an extension of the note, which was granted by written indorsement, the plaintiff contending that such extension was upon the unconditional promise of the defendant to pay same when next due, the defendant contending that the plaintiff promised, within the period of the extension, to remedy the defects, which it failed to do, and there was competent evidence tending to support both contentions; held, that this raised an issue of fact for the jury, and that the court did not err in submitting it to the jury.

**5. Appeal and Error—Review—Questions of Fact—Verdict.**

In a law action tried to a jury this court will not weigh the evidence on appeal, but where there is any evidence reasonably tending to support the verdict and the record presents no reversible error of law occurring during the trial, the verdict of the jury and the judgment of the court thereon will not be disturbed. The judgment in the instant case is affirmed.

On Petition for Rehearing.

**6. Sales—Terms—Written Contract.**

A written contract of sale prescribing the terms and conditions upon which an article is sold is binding on the parties and is the

criterion by which the respective obligations of the parties are determined.

### 7. Same—Machinery—Breach of Warranty —Rescission—Waiver.

The written contract of sale described the article as being "one 30-60 Tractor complete with air starter, $2,750 Engine," and containing the following warranty: "Seller hereby warrants the engine named herein shall be tested at its factory before shipment and shall develop its rated horse power. That, the engine shall be made of good material and in a workmanlike manner. That repairs required any time within one year from date of first starting will be furnished to the buyer f. o. b. Beloit, Wisconsin, without charge, provided investigation shows such repairs are necessary by inherent defects of either material or workmanship of the machine furnished, but the seller assumes no liability nor will be responsible for damages or delays caused by such defective material or workmanship, nor will seller make any allowance for repairs or alterations made by others, unless same are made with its written consent." Held, that the purchaser has the right to rescind, within a reasonable time, the contract of sale where the tractor failed to comply with the description and warranty as set out in said contract, after the seller has failed to make good the warranty; and the giving of a promissory note in settlement of the balance due on the purchase price of said tractor and securing an extension of time of payment, relying upon promises of seller's employes that the warranty contained in the written contract of sale will be made good, does not waive the right of the purchaser to rescind.

### 8. Same—Express Warranty Does Not Exclude Implied Warranty.

An express warranty in a contract of sale usually excludes an implied warranty; but, in the sale of machinery under a written contract of sale, in addition to the express warranty contained in the written contract, there is an implied warranty that such machine or article shall correspond with the description contained in the written contract of sale, and that the same is suitable to perform the ordinary work for which the described article is made or manufactured; and such an implied warranty does not contradict nor conflict with the express warranty.

### 9. Contracts—Construction — Reasona'leness —Harmonizing Clauses.

Every contract must be construed, if possible, to give effect to each and every provision thereof, but courts will not indulge in a construction of a contract which will render the same unreasonable while another will do justice to both parties, and while clauses in a contract apparently repugnant must be reconciled if it can be done by any reasonable construction, yet, if a subsequent clause is irreconcilable with a former clause, and repugnant to the general purpose and intent of the contract, the same will be set aside.

Error from District Court, Kay County; W. M. Bowles, Judge.

Action by Fairbanks, Morse & Company, a corporation, against Joseph C. Miller and others on promissory note. Judgment for defendants, and plaintiff brings error. Affirmed.

J. F. King and Wm. C. Forsee, for plaintiff in error.

W. H. England, Felix Duval, Sam K. Sullivan, and J. H. Hill, for defendants in error.

JOHNSON, J. This is an appeal from the district court of Kay county, Hon. W. M. Bowles, Judge.

This was an action on a promissory note commenced by the plaintiff on November 26, 1916, to recover from the defendants the sum of $2,000 and interest, with a copy of the note attached to plaintiff's petition.

On January 9, 1917, the defendants filed their answer and cross-petition, and on April 5, 1917, filed an amended answer and cross-petition, to which the plaintiff filed a reply on April 23, 1917.

The trial was commenced on November 19, 1917, before the court and jury, and very soon after the commencement of the trial the defendants asked leave of the court to file a second amended answer and cross-petition, which was granted over the objections of the plaintiff. Time was taken for the defendants to prepare and file the same and for the plaintiff to file its reply thereto.

The record discloses that the plaintiff was granted permission by the court to continue the case if it so desired, but it declined so to do, and the trial was proceeded with, which resulted in a verdict in favor of the defendants.

The plaintiff filed a timely motion for a new trial, alleging numerous errors committed by the trial court, which motion was overruled by the court and exceptions saved, and thereafter this proceeding in error was regularly commenced to reverse the judgment of the trial court, the specifications of error being:

(1) The court erred in giving instructions number 3, 4, and 5:

(2) The court erred in refusing plaintiff's requested instructions 1 to 7, inclusive;

(3) The court erred in admitting evidence;

(4) The court erred in excluding evidence;

(5) The verdict and judgment were against the law and the evidence;

(6) The court erred in overruling plaintiff's motion to strike out parts of answer;

(7) The court erred in overruling plaintiff's motion for a new trial.

The allegations of the defendants' second amended answer and cross-petition were as follows:

"Come now the defendants, and for their second amended answer and cross-petition, leave of court first having been obtained, deny each and every allegation therein contained, save and except those herein specifically admitted or otherwise responded to.

"The defendants admit that they signed the note sued upon, but allege that the consideration therefor has wholly and fully failed, in this, to wit: that the $2,000.00 for which said note was given was part purchase price of a certain machine which was warranted by the seller, in writing, to be a 30-60 horsepower tractor, meaning thereby to develop 30 horsepower as a tractor, in addition to carrying its own weight and 60 horsepower when used as a stationary engine from the belt; further warranting that the engine should be made of good material and in workmanlike manner.

"The defendants further allege that the said engine for which said note was given was to be used as a tractor, for pulling plows and binders for cutting grain, and for threshing machines, etc., as a stationary engine; that said engine has wholly failed to perform its function as a tractor or to develop the said 30-60 horsepower at any time, and has failed at all times to work or operate in high gear; that the engine was of such defective nature and had so much vibration that it destroyed its usefulness by tearing itself to pieces, because of defective bolts and material in said engine and the said vibration brought about by the use of the machine as tractor.

"The defendants specifically deny that the machine was made of good material or in good workmanlike manner; and specifically allege that the engine would not and did not develop the 30-60 horsepower in operation or when tested. The defendants, further answering, say that the air starter on said machine wholly failed to perform its function and failed to start machine to exceed three times after the machine was placed on the place of defendants herein and that the said tractor was to be complete with the said air starter, and the said air starter is absolutely worthless, as well as the tractor, and was at the time furnished, and has wholly failed to perform its work, and the said tractor has wholly failed to perform its work as warranted by the plaintiff herein, and has wholly failed to develop the said horsepower warranted.

"The defendants, further answering, allege the fact to be that, the said tractor failing to work, during the fall of 1914, and being defective in workmanship and materials, and in not developing the said horsepower, the plaintiff's agent agreed, orally and verbally, to repair and fix the said tractor until the same would do the work warranted that it would do and develop the horsepower warranted to develop, and to furnish repair until the said machine was as good as new, and make the said machine do the work which it was intended, and, relying upon the said statements and believing the statements and representations of the plaintiff's agent and that they would make the machine work and develop the said horsepower, as warranted it would do, and furnish the repairs to make it of good material and in workmanlike manner, the defendants paid to the plaintiff the sum of $750.00 on said engine and gave their promissory note for $2,000.00, due August 15, 1915; that in the spring of 1915, when the time came for operating said machine, relying upon the promise to make good, the defendants sent to the plaintiff and asked for a man to come and repair and make said machine operate, and were required to pay the salary of said man so to do, which they did willingly, and that the plaintiff sent to the ranch of the defendant herein, one of their agents by the name of Snyder, who worked 30 days upon said machine and succeeding in making it work about four days out of the thirty days, the balance of the time being spent in repairing or waiting for repairs for the said machine that had torn itself to pieces in the operation thereof, and trying to get it to develop the said horsepower warranted, which it failed to do and did not do.

"The defendants further state that the said Snyder was then called away and the note about to become due, so the defendants wrote the plaintiff and asked for extension of the note, still believing and relying upon the statements and representations and warranties in the contract, that the machine would be made to do its work; that the said extension was granted to February 16, 1916; that the defendants then tried again during the fall to operate said machine, and it continuously tore itself up with vibration and because of the defective material placed in the engine at the time of its manufacture, and completely and wholly failed to develop the horsepower warranted in the warranty that it would develop or test.

"The defendants further state that they permitted the year under which the warranty to furnish repairs was made, to elapse, believing and relying upon the statements made by the plaintiff through its agent, which were false and untrue, that the plaintiff would make the engine work and develop the said horsepower and repair the said machine until the defects of said engine would be replaced with good materials

and in a good, workmanlike manner, and would develop the horsepower it was warranted to develop and to do the work it was intended to do; that the defendants began a correspondence with the main office of the plaintiff after failing to get the satisfaction through its agents who came and attended to the working of said machine as alleged, and told the plaintiff that said machine was experimental and would not do the work for which it was intended and which it was warranted to do; that on the 2nd day of February, 1916, the defendants wrote to L. S. Carr, the general manager of the plaintiff, at Kansas City, Missouri, and advised him that one of the defendants would be in Kansas City to take the matter up with the said manager of said plaintiff, L. S. Carr; that pursuant to said letter, George L. Miller, one of the defendants, went to Kansas City, and after conversing with the said manager, L. S. Carr, offered to return the said machine and lose what they had paid upon the said engine if he woudl turn over the said note, advising him that the said machine was defective and would not develop the horsepower it was warranted to develop and would not do the work it was intended to do, and had not; that the said L. S. Carr thereupon· agreed to make the machine good and do the work it was intended to do, and to develop the said 30-60 horsepower and to be placed in a workmanlike manner and the defective parts replaced, and make this machine operate, before the defendants would be required to pay said note; that the defendant, George L. Miller, then returned to Oklahoma, and a few days after, received a letter from L. S. Carr, that he had written the company at Chicago, and that the company in Chicago demanded payment of this note, and then for the first time, the defendants refused to pay this note, and permitted suit to be brought thereon, being the first time that the defendants were apprised that the plaintiff did not intend to carry out its agreements, both written and verbal, to make this machine work and make its defects good and in a good, workmanlike manner, and to develop the horsepower it was intended to develop and warranted to develop.

"Defendants, further answering, and by way of cross-petition, allege and make a part of the cross-petition, all the facts hereinbefore set out in their second amended answer, the same as if recited herein, and further allege that they have paid upon this worthless machine the sum of $750.00, together with about $300.00 freight, and approximately $400.00 for repairs, and further allege that the loss of time and delay and expense paid for men to operate the machine and the delay in their work would just about counter-balance, offset and pay for the plowing done, and that the defendants have been damaged in the sum of $1,250.00 by reason of this transaction and the things heretobefore set out.

"Wherefore, the defendants pray that they go hence and without day and that this action be dismissed upon the promissory note, at the cost of the plaintiff, and that they have judgment against the plaintiff for the sum of $1,250.00 damages, and the costs of this action."

The plaintiff's reply denied generally and specifically in great detail all the material allegations in the defendants' second amended answer and cross-petition.

At the conclusion of the plaintiff's evidence, the court sustained the demurrer of the plaintiff to that part of the cross-petition wherein the defendants asked for damages in the sum of $1,250.00, to which the defendants save no exceptions and from which they have not appealed.

The record discloses that in June, 1914, the defendants, by and through the defendant George L. Miller, who was at the time actively engaged in managing the 101 Ranch, and conducting the business for the defendants, entered into negotiations with the plaintiff, by and through its agent, W. R. Erskine, for the purchase of one 30-60 horsepower tractor, complete with air starter and engine, and as a result of which negotiations the defendants gave the said agent of the plaintiff an order for said tractor; that Erskine and the defendant George L. Miller were well acquainted, the said Erskine having sold the defendants a great deal of farm machinery and having conducted the business of the plaintiff with the said defendants prior thereto. The order so given for said tractor was in writing, and was accepted by the plaintiff, it seems, on June 22nd. The order bears the signature of George L. Miller and is not denied, although George L. Miller admits that he did not know that he had signed an order until so informed by counsel for the plaintiff, after the same was called for trial and after Mr. Sullivan had made the opening statement for the defendants and after the defendant George L. Miller had started to testify. At any rate, there was a written order for said tractor which was accepted by the plaintiff, which, among other things, contained an express warranty warranting the said tractor (1) to develop its rated horsepower; (2) that it would be made of good material and in workmanlike manner; and (3) that repairs required at any time within one year from the time of first starting would be furnished by the buyer f. o. b. Beloit, Wisconsin, without charge provided investigation showed that such repairs were made necessary by inherent defect of either material or workmanship of the machine furnished.

That in said order it was agreed that the terms of sale were $400 to be paid September 1st, and the balance January 1, 1915, there being included in said order one second-hand separator at the price of said $400, and the price of the tractor to be $2,-750.

That thereafter plaintiff did deliver to the defendants a tractor and sent a man to assist and superintend in the unloading and delivery thereof, to the farm of the defendants, from the point of shipment to wit, Ponca City, Oklahoma, who was an expert in handling tractors; that the defendants also had in their employ at least three men of experience in the handling of tractors and competent to do so; that said tractor was unloaded by the agent of the plaintiff, with the assistance of the employes of the defendants, and he attempted to drive the same by its own power to the farm of the defendants; that said tractor then displayed that it was not made of good material or in a workmanlike manner, it being a new tractor and breaking in some places, burning out main bearings, etc. The tractor finally reached the farm of the defendants, where it was taken to the blacksmith shop. The said agent of the plaintiff then tried to repair the defects and did some welding and other repair work, and, after a day of repairing and rebuilding, they finally got the machine out into the field and demonstrated it to the employes of the defendants, and left; that defendants' employes then tried to use said tractor, and did use it as much as they could, and did everything that they could to make the machine work, but various parts of the said tractor engine continued to break, necessitating repairs; repairs were sent for, some of which were paid for by the plaintiff, and a great deal of time and labor, to say nothing about the repairs, were used trying to repair and rebuild said engine. The bolts, rods, crank cases, etc., were constantly breaking; complaints were made to the agents of the plaintiff, the defendants claiming the said engine was defective, that it was not made of good material or in workmanlike manner and was not what it was warranted to be. Plaintiff was informed of the defective condition of the engine and complaints were made as aforesaid on numerous occasions and each time it would promise to put the engine in proper shape and remedy the defective parts. That said engine was retained by defendants pursuant to said promises and for the purpose of giving the plaintiff an opportunity to make good its warranty at its request, or the request of its agents.

The vibration of the engine was so great that it would literally shake the engine to pieces, loosening bolts, nuts, and other parts, as a result of which other bolts would break and cause other important parts of the engine to break. The starter never would work and was never made to work, although plaintiff was informed of its condition also. Very little work was done with the said tractor engine, but a great deal of time was consumed between the time the tractor arrived and the time it was stored in the fall in waiting for repairs and in trying to repair it both by the plaintiff and defendants, and finally the defendants came to the conclusion that plaintiff had not and could not comply with its contract with the tractor that had been sent, and when Mr. Erskine, the man who had sold defendants the tractor, came to make settlement, the defendants refused to settle or pay for the said tractor; thereupon an agreement was reached whereby the entire account of the defendants with the plaintiff was settled with the exception of the tractor in question, and it was then agreed that if the defendants would give plaintiff their note for $2,000.00 ($750 of the purchase price having been paid to take care of it in some other manner) plaintiff would make good its contract of warranty, remedy the defects in the machine, and put it in first class shape, and upon the strength of these promises and inducements and in consideration thereof, defendants executed and delivered the note sued upon in this case, as the balance of the purchase price for said machine. It was further understood and agreed at said time that the machine was not being run and would not be run until the following spring, but before that time the plaintiff was to send a man to repair, rebuild, and put the machine in first class shape, satisfactory to the defendants. Pursuant to this agreement the note was executed and delivered and accepted by the plaintiff, and in June, 1915, the company sent their agent, an expert tractor man, Snyder, but insisted upon the defendants paying him at the rate of $100 per month, and in order to get him the defendants were compelled to pay him the said rate. After arriving, Snyder had to leave on business for the company and was gone for four or five days and upon his return he commenced to work on the said tractor engine. He remained there until the latter part of June, overhauling the engine and trying to make it work properly, but did not do so and did not repair successfully or remedy the defective conditions in the engine, failed to get the engine to work and failed to put it in first class shape, and when he left said engine was practically in

the same shape that it was in when the note was given, except that more repairs were put on the engine. When Snyder left he said he had to go away to look after some other tractors for the company; that he had been sent there to make the engine work satisfactorily and that he would come back and remedy the defects. He never came back. Defendants, at the request of plaintiff's agents, tried, from time to time during the following months of July, August, and September, to use the tractor, during which time they continued to have the same trouble, and in October the company again sent a man to the ranch of the defendants to fix the machine, who failed to fix it, and at that time the engine was stored.

The note sued upon is dated January 1, 1915, and made due and payable August 15, 1915.

In August, 1915, after various conversations and promises of the plaintiff's agents and still believing that the company would make the promises good and comply with its contract of warranty, it seems that George Miller wrote a letter to the plaintiff's agent at Kansas City in response to one written to him, stating that it would be inconvenient for defendants to take up the note in question at its due date. There was some further correspondence and the note was extended for six months, making its due date February 15th. Up to this time plaintiff had not complied with its contract of warranty and the agreement made at the time the note was given, but the machine was still in the possession of the defendants, at the request of the plaintiff, in order that it might comply with its agreements. Nearly all complaints and dealings relative to the machine were had between the defendant George Miller and the agents of the plaintiff, Erskin and Snyder. Miller's reason for corresponding with the Kansas City branch was that he had received a notice from that office notifying him that the note would be due on August the 15th, and his purpose in writing the letters that he did was to avoid payment of the note until the tractor was working satisfactorily and the plaintiff had complied with its agreements, which was the agreement at the time he made the note; but it seems that instead of getting better the tractor got worse.

On August 18, 1915, three days after due date of the note, Miller wrote a letter to the plaintiff at the Kansas City branch office, demanding that they take the machine back or comply with their agreements.

The plaintiff continued to work with the machine and tried to remedy the defects, and in October again sent a man to repair and rebuild the machine, but he was unable to remedy the defects, or at least did not do so, and the engine was put in the shed.

Plaintiff having failed to comply with its agreements, in February, 1915, before the due date of the note, Miller wrote a letter to the office of the plaintiff at Kansas City, saying that he would be in Kansas City and would take up the matter of the note with them, and pursuant thereto did go to Kansas City and talk with a Mr. Carr, general manager of the Kansas City branch office, and told him that the defendants would not pay the note, or would not pay it until plaintiff complied with its contracts, and tried to get the plaintiff to take the machine back.

At first Carr refused to take the engine back, but again offered to put the machine in good condition, and finally said he would let Miller know within a few days what plaintiff would do, and after returning home defendants received a letter from plaintiff saying it would do nothing.

On February 14th, defendants wrote a letter to the company again refusing to make the payment of the note and suggesting that, in view of the fact that plaintiff had failed to comply with its agreements and would not do so, they could bring suit to determine the rights of the parties, and in November, 1916, this suit was filed.

From this record it is clear to us that all of the specifications of error of the plaintiff were without merit.

We have examined the instructions of the court given to the jury, as well as the requested instructions of the plaintiff that were refused, and find the same, and the rulings of the court in relation thereto, remarkably free from error. The testimony of the defendants' witnesses, George L. Miller and the employes of the defendants who attempted to handle and operate the tractor, that the tractor was defective and would not do the work for which it was purchased, is practically undisputed and shows clearly that the jury was fully warranted in finding that the tractor was so defective in material and workmanship that it was entirely worthless and therefore the verdict of the jury was amply supported by the evidence, and, as we have seen, the court properly instructed the jury as to the law.

This brings this appeal clearly within the rule so often announced by this court and so well understood by the bench and bar of this state, that it is not necessary here to cite the numerous cases supporting the rule—that in a law action tried to a jury, the verdict of the jury will not be disturbed on appeal

where there is evidence reasonably tending to support the same, and where, as stated, no reversible error is found in the record.

As to the questions of law raised by counsel applicable to this case, it is sufficient to say that every applicable question raised by counsel was passed upon by this court and decided adversely to counsel's contention in the case of Hart-Parr Co. v. Duncan, 75 Okla. 59, and the decisions of this court cited therein, of Young v. Blackart, 51 Okla. 285, 151 Pac. 1057; Barber Medicine Co. v. Bradley, 48 Okla. 82, 150 Pac. 127; Rawlings v. Ufer, 61 Okla. 299, 161 Pac. 183; J. I. Case Threshing Machine Co. v. Huber, 160 Mich. 92, 125 N. W. 66, 32 L. R. A. (N. S.) 212. It will be unnecessary to cite other authorities or use additional argument in this opinion.

Finding no reversible error in the record, the judgment of the trial court is therefore affirmed.

HARRISON, C. J. and KANE, MILLER, and KENNAMER, JJ., concur.

---

### On Petition for Rehearing.

KENNAMER, J. This cause is before the court upon a petition for rehearing filed by Fairbanks, Morse & Company, plaintiff in error, and counsel in support of the petition for rehearing have, with much ability and earnestness, presented numerous reasons why the motion for rehearing should be sustained. This action was originally commenced in the district court of Kay county by the plaintiff in error against Joseph C. Miller et al. to recover upon a promissory note given in payment of the purchase price of a tractor engine sold the defendants in error in June, 1914, the contract of sale being in writing. The defendants, in their amended answer filed in this cause, pleaded a breach of warranty which they alleged was in writing, and in substance pleaded the warranty found in the written contract of sale. The contract of sale contained the following provisions:

"Kansas City, Missouri, Miller Bros.. (hereinafter called buyer) of Bliss, Oklahoma, Fairbanks, Morse & Company, (hereinafter called seller) hereby propose to furnish and deliver f. o. b. cars Beloit, Wisconsin, one 30-60 tractor complete with air starter, $2750 Engine.

"Warranty.

"Seller hereby warrants that the engine named herein shall be tested at its factory before shipment and shall develop its rated horse power. That the engine shall be made of good material and in a workmanlike manner. That repairs required any time within one year from date of first starting will be furnished to the buyer f. o. b. Beloit, Wisconsin, without charge, provided investigation shows such repairs are made necessary by inherent defects of either material or workmanship of the machine furnished, but the seller assumes no liability nor will be responsible for damages or delays caused by such defective material or workmanship, nor will seller make any allowance for repairs or alterations made by others, unless same are made with its written consent."

The contract then, after providing for a warranty of the engine, has this further stipulation:

"Delivery to carrier consigned to buyer is a conditional delivery to buyer for the purposes hereof, and waives any claim that seller or its assigns has breached any warranty, or other stipulation hereof, except as to defect in material or workmanship."

It is insisted by counsel for plaintiffs that, the contract of sale being in writing, the mutual rights and obligations of the parties to it must be determined by the writing itself, and not by considerations de hors the writing; that the written contract is the criterion by which the obligations of the parties must be determined. We agree with counsel that the obligations of the parties to this controversy must be adjudicated according to the terms of the written contract of sale, but we cannot concur in the contention made by counsel that the warranty of the engine sold as being of good material and constructed in a workmanlike manner would be satisfied in case of a breach of such warranty by merely furnishing repairs for one year, whether the repairs served any useful purpose in making good the defects or not. According to the contention urged by counsel for the plaintiff in this cause it could have shipped any kind of a worthless tractor engine to the defendants and then furnished repairs for one year and thereby all of its obligations and responsibilities to the defendants by reason of having furnished the repairs for one year would be discharged. The warranty under consideration in unmistakable language obligated the plaintiff to furnish the defendants a tractor engine of 30-60 horse power, constructed of good material in a workmanlike manner. The plaintiff assumed the further obligation of repairing this engine for one year on account of inherent defects in material or workmanship. According to a respectable portion of the testimony in the case at bar, the repairs furnished did not remedy the defects of the engine. If the warranty in the case at bar is to be given the construction claimed by the plaintiff, the provisions of the contract of sale warranting the engine to be of good material and constructed in a work-

manlike manner and that it would develop 30-60 horse power, would be meaningless.

The court will not permit parties to assume a solemn obligation under a written contract and then avoid it by some catch phrase or indefinite statement. In the case of Jones v. Penn. Casualty Co., 140 N. C. 262, 5 L. R. A. (N. S.) 932, the Supreme Court of North Carolina, in construing an insurance policy for an indemnity of $5 per week for 26 weeks, said:

"The policy, section 4, contains a definite stipulation for indemnity at $5 per week, not to exceed 26 weeks, in case of disability arising from certain specified diseases, blood poisoning being one expressly named. This disease being evidently the direct and controlling cause of the disability, as a matter of first impression the right of the plaintiff to recover would seem to be clear. The policy, however, having given this assurance of indemnity, then takes up the matter of provisos by way of restriction, and stipulates further: (1) That this policy shall not apply to any illness or disease whatever except those named. * * * There are many other limitations and restrictions in the policy, for, as my Lord Coke would say, the 'etc.' meaneth much; but those set out are enough to show that, if these provisos can prevail, blood poisoning is entirely withdrawn from the operation of the policy, and any and all stipulation for indemnity concerning it effectually removed. * * * As to this disease, therefore, these provisos remove every possible condition where the disease can occur and, if upheld, would, as stated, entirely set aside the definite contract for indemnity contained in a former clause of the policy. Such a result cannot be permitted, and is not sustained by authority."

To adhere to the contention urged by counsel for the plaintiff that the extent of the obligation on the part of the seller of the engine was to furnish repairs to satisfy the first part of the warranty under the contract of sale would in effect mean that if the engine would not develop any horse power whatever, or if in fact the engine would not move its own weight, the defendants would have no remedy whatever, except to ask for repairs. Such a conclusion is not founded upon reason, and no such construction can logically be placed upon the contract in question. If the contract means anything, the engine was to be one constructed in a workmanlike manner, of good material, useful for the purposes for which such articles are manufactured and placed upon the market.

Webster's New International Dictionary defines "workmanlike" as "skillful and well done." The Century Dictionary defines the word "workmanlike" to mean "like and worthy of a skillful workman; hence, well executed; skillful"; and "skillful" is defined

as "having ability in a specified direction; experience, practice."

The Supreme Court of Oregon, in the case of Holland v. Rhoades, 106 Pac. 779, said:

"Good and workmanlike manner means in such a way that a workman of average skill and intelligence, the conscientious workman, would do the job. It is good, average work. What is considered the work of a man of good workmanlike ability."

Now, if the engine in question sold was not constructed in such a way as to make it useful for the purposes for which such machinery is ordinarily used, then the warranty was breached, and the furnishing of repairs until doomsday, without remedying the defects, would not be a compliance with the warranty.

The testimony which plaintiff complains of being admitted over its objections and exceptions was the statement of different mechanics furnished by the plaintiff to repair the tractor in controversy. This testimony was competent for the purpose of showing that the tractor was defective in material and construction, but could not be admitted for the purpose of establishing the obligation of the plaintiff, as that was controlled by the written contract of sale.

It is insisted, with great persistence, that a delivery to the carrier of the tractor in question consigned to the buyer constituted a waiver on the part of the buyer to insist on the warranty that the engine would develop its rated horse power. The effect of placing such construction on the contract of sale would lead us to the absurdity that if the tractor received by the defendants would not develop any power whatever, the defendants could not complain; or, in other words, if the tractor was useless for any purpose for the reason that it would not develop any power, then the defendants must abide by the contract and keep the tractor, although they would have to junk it the first day they received it.

The contract provides that the plaintiff shall furnish a 30-60 horse-power tractor engine. Now, before the plaintiff is entitled to recover the purchase price, it must furnish what it sold; and, disregarding any warranty whatever, it agreed to furnish a 30-60 horse-power tractor engine, and, in addition to agreeing to sell that kind of a tractor, it specifically warranted that it had tested the engine and that it would develop its rated horse power. To hold that the plaintiff was relieved from this solemn obligation on account of the provision of the contract that a delivery to the carrier of the tractor consigned to the buyer waived any claim that

the defendants have by reason of the warranty would be to render that part of the contract of sale in which the plaintiff agreed to furnish an engine of 30-60 horse power a nullity. It would have been impossible for the defendants to receive the tractor at their place in Oklahoma from the seller without a delivery to the carrier, and if the construction is to be placed upon that part of the contract with respect to a delivery to the carrier as argued by the plaintiff, the same is in conflict with that part of the contract obligating the plaintiff to furnish a tractor of a certain rated horse power and warranting the same to have been tested, and the same could not be sustained.

It is a well-settled rule of law, where two clauses of a contract are so repugnant that they cannot stand together, the first is to be given effect and the latter rejected. 6 R. C. L., sec. 236; Henne v. Summers (Cal.) 116 Pac. 86. The Supreme Court of North Carolina, in Nelson C. Jones v. Pennsylvania Casualty Co., supra, said:

"Another principle applicable to the case before us, and equally well established, is that, while clauses in a contract apparently repugnant must be reconciled if it can be done by any reasonable construction, yet a proviso which is utterly repugnant to the body of the contract and irreconcilable with it will be rejected; likewise, a subsequent clause irreconcilable with a former clause and repugnant to the general purpose and intent of the contract will be set aside. Hawkins v. Goldsboro Lumber Co., 139 N. C. 160, 51 S. E. 852; Bishop on Contracts. secs. 386, 387; Devlin on Deeds, sec. 838; Beach, Modern Law Contracts, sec. 718."

If one construction would make a contract unreasonable, while another would do justice to both parties, the latter will be adopted. Every part of a contract must be taken to have been used for a purpose, and each provision must be considered in connection with others, and, if possible, effect given to all. The courts will look to the written instrument and, if possible, give such construction as will give some effect to each part of the contract, and at no time will the court place a construction upon a contract that will place the parties thereto in an absurd and unreasonable position. The existing and settled law becomes a part of every contract and must be read into it, and all contracts must be construed according to the rules and principles of law applicable to the subject-matter of the transaction, and in the case at bar there was an implied warranty that the tractor furnished by the plaintiff would correspond with the description, and that it would be suitable to perform the ordinary work which the described machine is manufactured to do.

In the case of Davis Calyx Drill Co. v. Mallory, 137 Fed. 332, Judge Sanborn laid down the following rule:

"The extent of an implied warranty in such case is that the machine, tool, or article shall correspond with the description or exemplar, and that it shall be suitable to perform the ordinary work which the described machine is made to do."

Many authorities sustain the rule that an implied warranty on sales of machinery that does not contradict the terms of an express warranty may be established, and especially it is permissible to show that the machinery is fit for the purpose for which it was purchased. Blackmore v. Fairbanks, Morse & Co., 79 Iowa, 282, 44 N. W. 548; Loxtercamp v. Lininger Implement Co., 147 Iowa, 29, 125 N W. 830.

The Supreme Court of Tennessee, in the case of Southern Brass & Iron Co. v. Exeter Machinery Works et al., 70 S. W. 614, said:

"One who sells machinery for a special use, communicated to him at the time, impliedly warrants that it is reasonably suitable for the use intended, whether it was in stock or specially manufactured to fill the particular order."

In the case of Michael Seitz v. Brewers' Refrigerator Machine Co., 141 U. S. 510, 35 L. Ed. 837, the Supreme Court of the United States, speaking through Mr. Chief Justice Fuller, said:

"In the case at bar the machine purchased was specifically designated in the contract, and the machine so designated was delivered, put up, and put in operation in the brewery. The only implication in regard to it was that it would perform the work the described machine was made to do, and it is not contended that there was any failure in such performance."

Now, in the case at bar the tractor to be furnished under the written contract of sale was described as a 30-60 tractor. Undoubtedly by that statement the plaintiff meant that it would furnish to the defendants a tractor that would develop 30-60 horse power. If the tractor sold would develop its rated horse power, it necessarily follows that it would be useful for the ordinary purposes of operating a threshing machine, binders, and plows; so we believe the rule to be well founded and supported by authorities that in a sale of machinery there is an implied warranty that it will perform the ordinary work which such machinery is manufactured to do.

It was competent in the case at bar to admit the testimony of the different witnesses as to how the tractor operated and the result obtained from the operation of the machine. It was, therefore, competent for

the witnesses to testify as to the horse power developed by the \engine.

The plaintiff in error, in its motion for rehearing, says it is not true that on the date of the execution of the note in question the defendants refused to settle for the tractor and that the plaintiff agreed that it would make its contract of warranty good and remedy the defects in the machine; and contends that Mr. Erskine, the traveling salesman of the plaintiff, had no authority to make any contract binding the plaintiff. We find in the record, at page 90, the following statement by the witness George L. Miller:

"Mr. Erskine came down to make settlement for the Fairbanks-Morse business; we had an irrigating pump and stationary engine and a small tractor and this tractor, and had a great deal of business with the Fairbanks-Morse Company that year. I don't know how much our account was, but it was considerable. On the settlement of this machine, I complained considerable to him; he says: 'We have our men in this territory and they will be with you any time you want them. This machine will be made good.' I complained to him about the crank-case; we never could keep it on; the men said the bolts kept breaking off. * * * That is how I came to give him the note."

Now, the plaintiff will not be heard to say that Mr. Erskine could not bind the plaintiff in this transaction. It accepted the note executed by the defendants and thereby ratified any agreement made by Mr. Erskine; and the reply filed by the plaintiff to the answer of the defendants pleaded the written contract of sale, which fixes the price of the tractor at $2,750, and a second-hand separator at $400, making a total of $3,150; and the reply filed admits that on September 14, 1914, defendants paid to the plaintiff $400, and on January 1, 1915, $750, leaving a balance due to the plaintiff of $2,000. The witness George L. Miller testified that the $2,000 represented the balance due on the purchase price of the tractor sold to the defendants. This was competent testimony supporting the verdict of the jury that the note was executed in settlement of the purchase price of the tractor in question, and his testimony upon this proposition was competent for the purpose of showing that the plaintiff had notice of the defects of the tractor sold, and to explain why the defendants executed the note and that their action in executing the note under the circumstances did not constitute a waiver of the warranty contained in the written contract of sale.

We have examined the record, and find that the court in his instructions to the jury fairly submitted the question of a breach of the written warranty to the jury; and there is competent testimony sustaining the verdict of the jury. The question of the waiver of the defects or a breach of the warranty by giving the note and securing a renewal thereof was properly submitted to the jury under the testimony, and the evidence shows that the defendants, on more than one occasion, tendered the property back to the plaintiff; that the same was retained at the solicitation of the agents of the plaintiff and that the plaintiff attempted, on different occasions, to repair the engine so that it would perform the service for which it was purchased.

It is therefore ordered that the petition for rehearing herein be denied.

All the Justices concur.