**WESTBROOK et al.  v.  WATTS.**

No. 3165.

Court of Civil Appeals of Texas.
Waco.

April 29, 1954.

Rehearing Denied June 10, 1954.

Kennedy & Granberry, Crockett, for appellants.

Spruiell, Lowry, Potter & Lasater, Tyler, for appellee.

TIREY, Justice.

Plaintiff brought this suit to recover the balance due upon a written contract for the drilling of an oil well and other obligations due him in connection with the completion of the contract. He itemized and verified his claim according to Rule 185, Texas Rules of Civil Procedure, as amended. The jury in its verdict found that the surface casing furnished by defendants for the first well was defective and that it was a proximate cause of the loss of the hole, and that plaintiff's employees ran the first string of surface casing in the well in a good and workmanlike manner. The court overruled defendants' motion for judgment non obstante veredicto and granted plaintiff's motion for judgment, and in the decree we find this recital: "And the jury having duly returned its verdict the same was accepted by the court without objection from counsel. Based upon the said verdict and the uncontested facts, the court finds that plaintiff should recover judgment against the defendants as herein provided,"

and decreed that plaintiff recover from defendants jointly and severally the sum of $6,231.39, with interest at the rate of six per cent per annum on $571.39 from January 1, 1951, and on the balance of $5,640 from February 1, 1950. Defendants seasonably perfected their appeal and this cause reached us on transfer by order of our Supreme Court.

(Perhaps we should say that this controversy arose in this manner: After the appellee had drilled the first well to a depth of a little more than 800 feet, he ran the surface casing and thereafter the appellants employed Halliburton Oil Well Cementing Company to do the cementing of this surface casing. When appellee undertook to resume drilling, some difficulty was encountered because the surface casing in some manner had either parted or broken and made it impossible for him to drill through the obstruction and reopen the hole and it became necessary for appellee to "skid over" and drill a new well. There is no controversy about the drilling of the second well and this controversy involves the expense of drilling the first well.)

The judgment is assailed on four points. They are substantially: (1) The error of the court in failing to submit to the jury appellants' requested special issues Nos. 1 and 2; (2) the error of the court in its definition of good and workmanlike manner contained in the charge; (3) the error of the court in failing to grant appellants' motion to instruct the jury to return a verdict in their favor; and (4) the error of the court in failing to set aside the verdict of the jury because the verdict was so contrary to the overwhelming weight of the testimony as to shock the conscience of the court.

Appellee's Counter Point 1 to Appellants' Points 1, 3 and 4 is: "The failure to run a measuring line at the time surface casing was cemented is no defense because this is a part of the cementing operation and by the written contract defendants agreed to furnish and supervise the cementing operations, thus there was no duty on plaintiff to run a measuring line and the failure to

do so cannot be the basis for a charge of negligence against plaintiff." We are in accord with this view.

Appellants here, who are designated as "the owners" under the written contract, had the following obligations:

"2. Equipment and Labor.

"a. Furnished by Owner: Owner, at his expense, shall furnish the services and materials required of him in said specifications, and in addition thereto, all casing (both surface and production), tubing, wellhead, connections, separators, flow lines, and other completion equipment installed in or upon said well and location and all required services and equipment of third persons for drill stem tests, side wall cores, casing perforations, electrical logs, cementing (including surface and production casing and squeeze jobs), and all cement so required. * * *

"4. Owners Prerogatives, Access, and Notice. The size and amount of casing (both surface and production) to be set, and the time, place, manner, and extent of all cementing, coring, testing, electric logging, perforating, squeezing, and completing said well shall be determined by owner and conducted accordingly. Owner and his nominees shall have access to the derrick floor and premises at all times, shall be furnished complete samples and full information at the times and places directed by him, and shall be notified and afforded reasonable opportunity to be present and to observe all coring and testing."

■ In view of the foregoing provisions of the contract, and since appellants recognized and accepted the obligations of the contract and employed the Halliburton Oil Well Cementing Company to do the cementing job, it is obvious that the failure to run a measuring line at the time the surface casing was cemented is no defense against appellee because this is a part of the cementing operations and there was no duty on appellee to run a measuring line

and the failure to do so cannot be the basis for a charge of negligence against him.

■ Appellants' Requested Issue No. 1, which was refused, asked whether plaintiff was negligent in failing to run a measuring line, and No. 2 asked whether such failure was a proximate cause of the loss. As we have previously stated, a complete answer to appellants' position is that there was no duty on appellee to run a measuring line under the terms of the contract and we see no reason why this discussion should be labored. " 'It is an elementary principle of the law that negligence is a failure to observe a legal duty, and when no duty exists, no legal liability can arise on account of negligence.' " Point 5, City of Wichita Falls v. Swartz, Tex.Civ.App., 57 S.W.2d 236, 237, no writ history. See also Panhandle Gravel Co. v. Wilson, Tex.Civ.App., 248 S.W.2d 779, n. r. e.; 30 Tex.Jur. 649; Montgomery Ward & Co. v. Scharrenbeck, 146 Tex. 153, 204 S.W.2d 508. See also Meier v. Thompson, Tex.Civ.App., 248 S.W.2d 493, points 2–4, page 499, n. r. e., and cases there collated. Also City of Bryan v. Jenkins, Tex.Civ.App., 247 S.W. 2d 925, points 4–6, page 928, n. r. e.

We come now to discuss appellants' complaint to the definition of "good and workmanlike manner" that the court gave in its charge: "By the term 'good and workmanlike manner,' as used in this charge, means the manner in which an ordinary prudent person engaged in drilling oil wells would have performed the particular work under the same or similar circumstances."

Appellants excepted to the court's definition as follows: "Such charge does not contain a proper definition of the words 'in a good and workmanlike manner' and the attention of the Court is called to the fact that the definition should be substantially as follows: 'by the term "in a good and workmanlike manner," as used in the charge is meant in the manner in which a conscientious person skilled in doing such work would do it and in a manner generally considered skillful by those capable of judging such work, and in such manner that upon completion of one step or phase of the work the succeeding steps or phases of the work could be done without interruption or hinderance occasioned or caused by the manner in which the preceding step or phase had been done.' They further point out that the definition contained in the charge is based upon the manner in which a prudent person would drill an oil well, and the manner in which a prudent person would have performed the particular work, it wholly fails to instruct the jury that the test is not what a prudent person would do in the performance of this work; they further point out that the work under investigation must have been performed in such a manner that when the succeeding steps or phases of the work were attempted they could be conducted and carried on without interference or hinderance caused or occasioned by the manner in which the steps or parts of the work under investigation had been done. The definition submitted does not place upon the plaintiff a burden as great as is that placed upon him by law, and under the definition as contained in the Court's charge an utterly incompetent and unskilled person might be found to be capable of doing and found to have done jobs in a good workmanlike manner, because the jury could so find if the workman performing the work were a prudent person, and it is again pointed out that prudence is not the test, but ability is the test."

■ We have given this matter our most careful consideration and it is our view that the foregoing criticism of the definition places a strained construction thereon. As we understand appellants' objection to the charge, it is to the effect that the definition makes no requirement of skill or ability. We are not in accord with this view. In appellee's brief we find substantially this statement: The contract required the appellee to perform his work in a good and workmanlike manner. This same obligation would have been implied had it not been expressly stated. There is the general requirement applicable to all contracts where one is required to perform a service that it will be performed with reasonable care or skill and the failure to do

so can be the basis for either a tort action, based upon negligence, or a contract action for failure to perform. The standard of performance is the same in either case. The definition requires appellee's conduct to be measured by that of an ordinary prudent person engaged in the drilling of oil wells. It was not necessary for the court to use the word "skill" or "care" because our view is that the phrase "workmanlike" manner itself implies these elements and certainly it would be expected that an ordinary prudent person engaged in the drilling of oil wells would exercise care and skill in his performance. It is true that the court's definition refers to an ordinary prudent person engaged in the drilling of oil wells. "Prudent," according to Vol. 35, Words and Phrases, page 7, means, "sagacious in adapting means to end, circumspect in action, or in determining any line of conduct, practically wise, judicious, careful, discreet, circumspect, sensible." Prudence, among other things, means "care to avoid practical mistakes * * *; that degree of care required by the exigencies or circumstances under which it is to be exercised." 73 C.J.S. page 273. Prudence has been further defined as "exercising sound judgment; recognized by practical wisdom." Such Funk & Wagnall's New Practical Standard Dictionary. Appellee says: "Is it not true that one engaged in the drilling business who exercises sound judgment and who is sagacious in adapting the means to the end would necessarily be required to have ordinary skill in such matters?" We are in accord with this view.

Our courts have uniformly held that ordinary care and diligence is the test of whether a contract has been satisfactorily performed, and this without reference to specific definitions concerning skill. The case of Fairbanks, Morse & Co. v. Miller, 80 Okl. 265, 195 P. 1083, 1090, cited and relied upon by appellants, dwells upon the meaning of "workmanlike" and says that it involves the element of skill and then defines skillful as " 'having ability in a specified direction; experience, practice.' " The court's definition in the case at bar in effect requires that degree of care that an ordinary prudent person would use en-

gaged in drilling oil wells under the same or similar circumstances and we think it is in substantial accord with the rule announced in Fairbanks, Morse & Co. v. Miller, supra. See also O'Neil Engineering Co. v. City of San Augustine, Tex.Civ. App., 171 S.W. 524; Shores Lumber Co. v. Stitt, 102 Wis. 450, 78 N.W. 562. In Burnett & Bean v. Miller, 205 Ala. 606, 88 So. 871, 872, we find this statement of the rule by the Supreme Court of Alabama: "The words 'good and workmanlike manner', as used in this and other contracts in this jurisdiction, for the performance of the discharge of the particular service, mean that the same shall be done as a person skilled in that business should do it—in a manner generally considered skillful by those capable of judging such work in the community of the performance." We think the foregoing rule is substantially the rule in Texas and that the court's definition is not in conflict therewith. Moreover, in the New Century Dictionary, Vol. 1, page 669, we find the word "good" defined, among other things, as meaning "competent or skillful." In Vol. 3, page 222, we find "workmanlike" defined as meaning "like or befitting a workman, skillful, well executed." Our view is that the definition given by the court of "good and workmanlike" is not in conflict with the foregoing definitions but is wholly consistent therewith. We have considered the entire evidence most carefully and it is our view that the definition of "good and workmanlike", as defined in the court's charge, could not have and did not mislead the jury in arriving at its verdict. In the event we are mistaken in this view and the definition complained of was erroneous, we believe it is harmless error under Rule 434, T.R.C.P. See Texas Employers Insurance Ass'n v. McKay, 146 Tex. 569, 210 S.W.2d 147, point 1. See also 3B Tex.Jur. 650 and Texas Power & Light Co. v. Hering, 148 Tex. 350, 224 S.W.2d 191, pt. 4. It is also our view that the evidence tendered is sufficient to support the verdict on the issues submitted to the jury.

Since we are of the view that no reversible error is shown, the judgment of the trial court is in all things affirmed.