## Texas Granite Oil Company v. Williams.

(Decided May 11, 1923.)

### Appeal from Warren Circuit Court.

1.  Mines and Minerals—Agreement for "Shooting" or "Pulling" Well
    Does not Include Repair of Defective Casing.—In a contract for
    drilling an oil well and providing that the contractor would allow
    the other party one day free time for the purpose of shooting or
    pulling well, the "shooting" of the well refers to the shooting at
    or near completion, or when the oil sand has been reached, to
    increase the flow of oil, and "pulling" is the withdrawing from
    the well of the casing placed therein after it has been demon-
    strated that the well is a non-producer, so that the contract does
    not require the contractor to withdraw and repair or replace de-
    fective casing without extra compensation therefor.

2.  Appeal and Error—Erroneous Submission of Construction of Con-
    tract Not Prejudicial Where Jury Correctly Construed it.—Error
    in submitting to the jury the construction of a written contract,
    instead of telling them as a matter of law what it meant, was
    not prejudicial, where the jury· by its verdict found the proper con-
    struction as a fact.

3.  Appeal and Error—Verdict on Conflicting Evidence Rendered Under
    Proper Instructions not Disturbed.—Where the evidence was con-
    flicting as to whether a leak in the casing of an oil well which
    prevented further drilling of the well was due to defective casing
    which had been furnished by the lessee or to the negligence of the
    contractor in drilling the well, a verdict for the contractor, rendered
    after proper instructions, will not be disturbed on appeal.

4.  Mines and Minerals—Well Driller Had Right to Abandon Work
    When Lessee Refused to Pay for Necessary Extra Work.—Where a
    leak in the casing of an oil well prevented the completion of the
    well to the depth agreed upon until the casing was replaced or re-
    paired, and the lessee refused to pay the contractor for the re-
    placing or repair of the casing at the price fixed by the contract

for extra work, the contractor was justified in refusing to proceed further with the contract and could recover the contract price for the depth to which he had already drilled.

HERDMAN & ROPER for appellant.

T. W. & R. C. P. THOMAS and THOMAS, THOMAS & LOGAN for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

Appellee is an oil well driller, and in 1920 entered into a contract with appellant whereby he agreed to drill for it three wells on a farm in Warren county, the wells to be drilled to a maximum depth of eleven hundred feet, he to receive therefor four dollars per foot, but appellant reserved the right to direct him to cease drilling at any depth short of eleven hundred feet. Appellant was to furnish the casing for the wells, and appellee agreed to furnish the rigs, tools, water, fuel, and to pay all incidental expenses connected with the actual drilling. It was further provided that all extra work performed should be paid for at the rate of forty dollars per day, but appellee agreed "To allow party of second part one day free time for the purpose of shooting well or pulling well."

The first two wells were drilled and paid for and are not in controversy. The third well was drilled to the maximum depth of eleven hundred feet, but about the time or just before that depth was reached the parties entered into a supplemental oral contract whereby appellee was to drill in addition one hundred feet upon the same terms and conditions as those set out in the original written contract.

Under the supplemental contract appellee continued to and did drill to the depth of eleven hundred and thirty-five feet when it was discovered there was a leak in the casing and water was running into the well. The casing had been placed in the well when it was of the depth of two hundred and twenty-two feet, and the leak was, as shown by the evidence, at a depth of eighty feet from the surface, but as stated was not discovered until the well reached the depth of eleven hundred and thirty-five feet. A controversy arose between the manager of appellant company and appellee as to whose duty it was under the contract to pull the casing and remedy the leak

to the end that the drilling might proceed. Appellant's manager claimed it was appellee's duty without expense to the company to remedy this trouble, and appellee claimed that he was entitled to pay therefor under the terms of the contract providing for extra work. The manager notified appellee he would not pay him and thereupon appellee stopped the work.

Appellee had been paid for the first thousand feet of the last well, and brought this action for five hundred forty dollars, the contract price for the one hundred and thirty-five feet.

The defendant in its answer alleged that the plaintiff had only drilled thirty-five feet of the last one hundred which he had undertaken to drill by his supplemental contract, and in violation of his said contract he then abandoned the well and refused to drill any further, and that under the terms of the supplemental agreement he was not to be paid for the drilling until he had completed the well to a depth of twelve hundred feet.

By way of counterclaim the defendant further alleged that when plaintiff had reached the depth of about eighty feet in drilling the well, because of his carelessness and negligence and lack of skill, he caused or permitted the well to be drilled crooked, or that plaintiff had negligently set the casing in the well in such manner that the water was permitted to enter therein through the wall of the casing at the point where the hole was crooked; and that plaintiff had fraudulently concealed from the defendant these facts, and same were not discovered by it until the hole had reached the depth of eleven hundred and thirty-five feet and until defendant had paid plaintiff for the first one thousand feet in the third well. Defendant then alleges that oil was discovered in the well in paying quantities, but on account of the plaintiff's improperly setting the casing and permitting water to enter therein the well had been rendered worthless and of no value to the defendant, and plaintiff had failed and refused to complete the same as agreed, by reason of all which the defendant has been damaged in the sum of twenty-five hundred dollars. The plaintiff by reply denied the affirmative allegations in the answer, and alleged the leak developed as a result of a defect in the casing furnished by appellant; that when the well had been drilled to a depth of eleven hundred and thirty-five feet and the water discovered in the hole defendant directed the plaintiff to pull and withdraw the defective

casing and replace same with new casing, telling the defendant at the time he would not pay any consideration to the plaintiff for pulling and resetting the same, thereby violating its contract providing for pay for the extra work, whereupon plaintiff ceased to work on the well and demanded of defendant the agreed consideration for drilling same.

On the trial the jury returned a verdict for the full amount claimed by the plaintiff, upon which judgment was entered and the defendant has appealed.

It is apparent the well could not have been completed to the depth of twelve hundred feet until the casing where the leak was had been withdrawn and either repaired or new casing put in, and therefore if under the terms of the contract appellee was entitled to pay for such work as extra work he had no alternative when informed by appellant's agent that he was not to receive any pay therefore except to go on and do the extra work without compensation, or abandon the further drilling. The first thing then is to determine under the terms of the contract whether such work was extra work for which he was to be paid forty dollars per day, or whether it was such as was embraced in his agreement "To allow party of second part one day free time for the purpose of shooting well or pulling well."

It is a matter of common knowledge that the shooting of an oil well is done always at a time when the well is at or near completion, or when the oil sand has been reached, the purpose being to loosen the formation to the end that the flow of oil may be increased. Likewise, the pulling of an oil well, in the parlance of oil operators, is the withdrawing from the well of the casing placed therein after it has been demonstrated to the satisfaction of the operator that the well is a non-producer, and we have no doubt from the context of the contract in question, as well as our general knowledge of the subject, that the "free time" appellee contracted for was to be given at the end of the drilling when it became necessary either to shoot the well to determine whether it was a producer, or to abandon the well and withdraw the casing from it because it was a dry hole.

In this case the court should have told the jury as a matter of law that this was the meaning of the contract; but inasmuch as the jury by its verdict found as a fact under an erroneous instruction that which the court

should have told it as a matter of law, the appellant has not been prejudiced.

The evidence on the issues of fact whether the well was negligently or crookedly drilled, and whether the casing was improperly placed in the well, and as to whether the casing was old and worn, was very conflicting. The plaintiff's evidence tended to show by himself and others the well was properly drilled, was not crooked, and that the casing had been properly placed therein. It likewise tended to show that the casing, or a large part of it used in this well, had been previously used in another well and had been blown out of that other well when the same was shot, and thereby injured.

On the contrary, the evidence for the defendant tended to show the well was crooked, and that the casing was improperly or negligently placed in it, and in addition that while part of the casing furnished by it and placed in the well by plaintiff had been previously used and had been blown out of another well by the force of nitroglycerin, it had thereafter been sent to a shop and repaired and re-threaded.

The instructions, except in the particular above referred to, reasonably and fairly submitted the issues to the jury, and we see no reason to disturb its verdict.

While the plaintiff may have shown some obstinacy in refusing to proceed with the work when the controversy arose between him and the company as to the interpretation of their contract, if he was in fact within his rights under it, as we have seen, he had the right to decline to further proceed with the work rather than forego the compensation for extra work to which he was entitled.

Judgment affirmed.