FRUGÉ, Judge.
Plaintiff and defendant entered into a ■written contract wherein the former obli-rgated itself to drill for the latter a test ■well in search of oil or gas on property near the City -of Alexandria known as the Eodi Plantation. Pursuant to the contract •the well -was drilled to a depth of approximately 325 feet at which point the well had to be abandoned for the reason -.that its casing ,had come apart about 150 feet from the surface. By agreement of .the parties, -the .drilling rig was moved • over a .few .feet .and another well commenced, it being completed to the required depth. The plaintiff presented to the defendant its bill for the work done on both wells and certain expenses in connection therewith in the sum of $17,629.40. Mr. Roland denied that he owed plaintiff more than $14,213.01 and plaintiff has filed this suit to recover judgment for the difference, to-wit: $3,416.39. On the trial, after plaintiff had added a remittitur and made certain corrections in the account, the amount sued for was reduced to $3,313.63. The items of charge in dispute relate to the first well and the cost of the surface casing for the completed well.
The undisputed facts are as follows: Defendant, in accordance with the contract, furnished and had delivered to the drilling site the necessary casing which was used pipe. After the well had been drilled to approximately 325 feet the casing was placed in it and subsequently cemented by the Halliburton Co., a specialist in this work which appears to be generally called upon for such service in the drilling of wells. After waiting for this cement to harden, the casing was pressure tested in accordance with the regulations of the Louisiana Department of Conservation and it was discovered that the required pressure could not be built up apparently because there was a hole or some defect in the casing. To overcome this difficulty, and in accordance with the usual practice in such cases, the Halliburton Company performed what is known as a “squeeze job” which entails the forcing of cement into the casing. This resulted in pressure being built up and maintained. Following this work, plaintiff renewed drilling operations and proceeded to drill through the cement left in the casing. At approximately 150 feet down, the drill struck “iron”, this seemingly being a portion of the casing which had broken loose or parted.
In its petition plaintiff alleges simply that the casing furnished by the defendant was defective. In his answer the defendant avers that the casing was satisfactory and was examined upon delivery and approved *216 by plaintiff’s authorized representative. Defendant’s further allegations are as follows.
“13.
“Defendant shows that all expenses and charges totaling Three Thousand Four Hundred Sixteen and 39/100 ($3,416.39) Dollars as particularized and set forth in plaintiff’s petition, occasioned by the said Halliburton surface and squeeze job, removing said drilling rig to commence operations and the purchase of additional surface casing was the direct and proximate result of plaintiff’s agents and/or employee’s negligence, omission of due and ordinary care and a general lack of the requisite skill of performing duties under the terms of said drilling contract in the following respects:
“1. Plaintiff’s agents and/or employees failure to exercise the care and caution required and expected of reasonable and prudent men to insure proper union of all surface casing joints.
“2. Failure to observe or maintain adequate scale indications on said drilling rig reflecting weight on all surface casing in ground.
“14.
“Defendant further affirmatively alleges that during the course and scope of plaintiff’s agents and/or employees’ employment with plaintiff and in particular during the initial phase of said drilling operations, said surface casing as furnished by defendant was under the exclusive management, control and operation of plaintiff’s agents and/or employees and that plaintiff knew or should have known and is therefore charged with knowledge of the failure of said agent and/or employee to properly join said surface casing, and further plaintiff knew or should have known that said pipe had been parted at a distance of approximately one hundred (100) feet from the surface while in the ground because of his agent and/or employee’s failure to make a proper union of said surface casing; accordingly, an inference and presumption of negligence on the part of plaintiff, his agent and/or employee arises and flows from the occurrence of said surface casing, being parted in the ground and the doctrine of ‘res ipsa loquitur’ is applicable herein and said doctrine is expressly invoked and. alleged.
“Alternatively, and only in the-event this Honorable Court should not find the specific acts of negligence hereinabove alleged and finds that said surface casing as furnished by defendant was in fact defective, defendant-shows that in accordance with the terms-of said drilling contract, plaintiff was-charged with the responsibility of good and workmanlike performance of all work relative to said drilling operations, more particularly with checking, accepting and employing all casing, materials, and supplies and equipment used, in said drilling operations; plaintiff either knew or should have known by the-exercise of due care and caution in examining said surface casing that said-casing was defective and as a prudent and experienced driller was negligent in allowing his agents and/or employees to use said casing in the initial phase of drilling said well.”
The trial judge has correctly evaluated! the testimony of the witnesses substantially as follows:
J. T. Wainwright, the tool pusher im charge of the drilling operation for plaintiff, testified concerning the casing and admits-that he examined and accepted it upon delivery. His crew took it off the delivery truck by means of a gin pole with chains and hooks. The casing was laid on the ground side by side. In this operation the-threads were damaged on one piece of the-pipe and Mr. Wainwright filed the threads- *217 to a satisfactory condition. This piece of pipe was the last one to go in the hole and was not the one which parted according to the witnesses.
John Coleman, a driller who dug part ■of the hole and ran a string of casing into the well, testified as did Mr. Wainwright to the details of all the operations. Both of them confirmed that good drilling practices were employed throughout.
Robert Gray, another witness for the plaintiff is production superintendent for the Placid Oil Company. In answer to a hypothetical question, he answered that the pipe may have parted because it was defective or had bad threads because the pipes were improperly threaded when joined, or because the casing was stuck on the bottom and was pulled in two. Additionally, he stated the bottom of the casing may become plugged with the result that application of pressure would break weak pipe or pipe with defective threads. However, this last theory would not be applicable if the casing did not hold the pressure in the beginning. The witness concluded that it was hazardous to run second-hand casing which had not been scientifically tested by one of the approved methods.
The final witness presented by the plaintiff was M. L. Nichols, Production Superintendent for Grubb & Hawkins Oil Company, with previous experience as a driller and tool pusher. He gave testimony similar to that of Mr. Gray in explaining what may have caused the casing to fail.
Called as a witness for defendant was Harry Gamburg of Alexandria, who is in the business of supplying pipe. He sold and delivered the casing involved in this case and was present when it was unloaded at the well site. It was used pipe with new threads and old collars and was of the type customarily used for casing. Mr. Wainwright examined and accepted it and his crew unloaded it, using several different methods. Several joints of the pipe were rolled off on the ground, striking each other and damaging their threads. He called this to Mr. Wainwright’s attention and received the reply that he would file the threads.
Donald M. Garret, an Alexandria attorney was also present when the pipe was unloaded and observed that several joints were rolled off unto the ground, striking other joints.
J. P. Perry, an expert with many years of experience in the drilling of wells, was called to testify by the defendant. In answering a hypothetical question involving the fact that several joints of casing were damaged in their threads in the unloading process, he stated his opinion to be that damaged threads had caused the pipes to part or it may have been that the casing had not parted and that the iron which was struck was a tool which had been dropped into the hole.
Another expert presented by defendant, Rodney Williams, is a tool pusher for Laughflin Brothers, a large drilling firm described by the witness as the largest drilling contractors in the world. In response to a hypothetical question similar to that addressed to Mr. Perry, he answered that in his opinion the pipe had parted because of bad threads and that sometimes threads are stripped by overtightening.
The trial judge then reasons:
“Accordingly, we do not know whether the casing parted at the threads, or whether it collapsed. Additionally, the experts have not been able to tell us when it parted, although they appear to think that this occurred after the casing had been cemented, otherwise, practically all of the cement would have been washed out of the hole at the surface. This opinion, however, is qualified by the possibility that all of the cement might have gone into underground formations.”
The position of plaintiff in argument is that the evidence showed that his work under the contract was in accordance with standard practice in the drilling of wells; that the burden is upon the defendant to *218 establish that there was lack of care or skill in the performance of the work, and that there is a total lack of such proof. In that connection there is cited the following from Vol. 17 C.J.S. Contracts § S91, p. 1234:
“Where there has been a substantial performance the burden is on defendant to show defects and omissions chargeable to plaintiff, or based on failure of the plaintiff to complete within the time agreed * *
The position assumed by defendant is stated in brief as follows:
“The main contention of the plaintiff is under paragraph 6 of the petition wherein the plaintiff contends that the casing furnished by the defendant proved to be defective and because of the defective equipment, the original well parted at a depth of 130 to 160 feet below the ground and could not be completed. This is a ground of recovery by the plaintiff and of course the plaintiff therefore bears the burden of proving that defendant furnished defective casing which was the cause of the cessation of work on the first well — We submit first of all that the plaintiff has absolutely failed to prove that the defendant furnished defective casing. On the other hand, we submit that the defendant has proved the casing furnished was not defective but that the parting of the casing below the surface of the ground was in all probability due to the neglect or fault of plaintiff.”
Accordingly, the paramount questions to be resolved herein are simply which of the parties bear the burden of proof and has that party discharged it.
In this case the plaintiff is suing to recover for work done under a completed contract. It is to be observed however, that there is the added factor of the claim that the casing furnished it was defective for which reason it is not responsible for certain cost items arising thereby. Plaintiff has alleged and strenuously argues that the-entire work performed was done in a good workmanlike and proper manner. Defendant, on the other hand, asserts that the casing was satisfactory and that the items of expense sued for were occasioned by the negligence and want of care on the part of plaintiff in failing to insure proper union of all the casing joints.
The trial court states:
“Were it not for the evidence relative to damage to some of the casing in the unloading process, the case would be susceptible to a very quick conclusion. Then it would be necessary only to say that plaintiff had established through the testimony of the tool pusher and driller that the work had been properly done and that since it is hazardous and often disastrous to employ used casing which had not been scientifically examined for defects plaintiff should recover in the absence of proof that the casing was in good condition as a prima facie case would then have been made out.
“However, plaintiff has admitted through the tool pusher that the threads of one joint of pipe was damaged in unloading. We have the testimony of this witness to the effect that the threads of this one joint were repaired and that it was run into the hole last.
“To the contrary, we have the testimony of Mr. Gamburg and Mr. Garrett in partial contradiction of the tool-pusher, Mr. Wainwright. Mr. Gam-burg is emphatic in saying that several' joints of pipe were rolled off the truck,, striking each other and having their threads ‘buggered’. Mr. Garrett was-equally emphatic in saying that several joints were rolled off and did strike each other. Both of these witnesses contradicted Mr. Wainwright in describing the unloading method. While it may be noted that Mr. Gam- *219 burg, having sold the casing, may be regarded as an interested witness, just •as Mr. Wainwright may be so regarded, this writer cannot refrain from stating that he has implicit confidence in the veracity of Mr. Gamburg and Mr. Garrett based on personal knowledge of these gentlemen.
“Has the plaintiff, then, sustained the burden of proof resting upon it? To say that it has would involve ignoring and casting aside the testimony of two respectable witnesses. Actually, the situation is that plaintiff made out a prima facie case by proof of good and proper workmanship and the inference that the casing parted necessarily because of defects. This prima facie case was met by defendant in producing two credible witnesses to contradict the sole witness of plaintiff on the issue of improper handling of the casing by testifying that not one but several joints were damaged, the inference being that damaged threads caused the parting of the casing. At this point it is noted the failure to produce or account for the parties in its employ who constituted the crew which unloaded the pipe and the members of the drilling crew who actually joined the string of casing and lowered it into the well.”
This finding of fact by the trial judge cannot be evaded. A careful study of the record leads us to the conclusion that the trier of facts was not manifestly erroneous in his conclusion, and therefore will not be disturbed by this court.
Some cases have been submitted which we will now discuss.
In Texas Granite Oil Co. v. Williams, 199 Ky. 146, 250 S.W. 818, the drilling contractor asserted in his petition that casing leakage was due to defects in the pipes. The well owner claimed that the condition was caused by .negligence in drilling operations. The plaintiffs evidence tended to show that the casing had been “shot” out of another well by nitro glycerin; defendant’s evidence tended to show that the damaged casing had been repaired and re-threaded and that there was negligence in drilling. The appellate court simply saw no reason to disturb the jury’s verdict for the drilling contractor on the conflicting evidence. In the case at bar, it is well to note that the trial judge found that the plaintiff did not show that the casing was defective. He relied on the testimony of defendant’s witnesses to the effect that the casing had been improperly unloaded and damaged in the process.
We are of the opinion that because of the different factual situation in the case at bar with the Texas Granite case, that it is not apposite.
In Holiday Oil Co. v. Smith, 100 Okl. 172, 228 P. 775, the drilling contractor plead that the casing collapsed because it was of too light a weight to withstand the pressure to which it was subjected. The owner denied this and plead that the plaintiff broke the pipe by dropping tools into the hole. Experts called by plaintiff testified that it was not safe to set a string of casing of the length used in this well consisting of the lightweight type used. Upon this evidence and the testimony showing proper drilling practices a judgment for the contractor was affirmed. There the court found that the trial court had correctly determined that the cause of the difficulty was the defective pipe. In the case at bar, the trial judge did not find that defective casing was the cause. Here the burden has not been met, whereas in the Holiday case the burden of proving that the casing was defective was met.
In Westbrook v. Watts, Tex.Civ.App., 268 S.W.2d 694, the facts were strikingly similar to those here involved. After the well had been drilled to about 800 feet, the surface casing was run and the Halliburton Company cemented it. When drilling was resumed, it was found that the casing had broken, thus necessitating that the rig be skidded over and a new well dug. The *220 jury’s verdict found that the casing was defective and that it was the proximate cause of loss of the hole and that the work had been performed in a workman-like manner. The court in affirming the trial court stated that there was sufficient evidence to justify a finding that defective casing was furnished to the appellees, and that because of this appellees were entitled to be paid for the 94 days in which there was no drilling. We observe that in the Holiday case there was actual proof of faulty casings as found by the trial and appellate courts, whereas, in this case it was not found that the casing was defective.
Plaintiff relies on the case of Westbrook et al. v. Watts, supra, as controlling in the present case. While we agree with the holding therein we do not find that it aids his case. In the Westbrook case, plaintiff brought suit alleging that the casing furnished by the plaintiff was defective and that it was the proximate cause of the loss of hole and necessitated the drilling of a second hole. The jury found that defective casing had been furnished to plaintiff, and the court in sustaining the jury verdict, stated that there was sufficient evidence for such a finding, and allowed plaintiff to recover costs and expenses for the drilling of a second hole.
A careful review of these three cases shows that they clearly represent the principles of law that if a person sues for the expense of an extra well alleging that he was furnished defective material, he clearly must sustain the burden of proof of proving the materials defective and furthermore must show that the defective material was the sole proximate cause and that there was no fault on his part as to quality of work. In the case at bar, plaintiff has not shown these essentials by evidence that preponderates.
For the assigned reasons the judgment of the district court is affirmed at plaintiff’s cost.
Affirmed.